STATE OF NORTH CAROLINA v. WILLIAM LEE UNDERWOOD AND DENNIS HARKEY

No. 39

(Filed 11 April 1973)

1. Indictment and Warrant § 14— grounds for quashing warrant

A warrant may be quashed only for its failure to charge a crime or a lack of jurisdiction of the court to try the case—defects which appear on the face of the record.

2. Indictment and Warrant § 14— motion to quash warrant — question of law — extraneous evidence not permitted

In ruling upon a motion to quash a warrant the judge rules only upon a question of law and is not permitted to consider extraneous evidence, that is, the testimony of witnesses or documents other than the specific statutes or ordinances involved.

3. Indictment and Warrant § 14— motion to quash — unconstitutionality of ordinance

When the defense is that the warrant or indictment charges the violation of an unconstitutional ordinance or statute, the motion to quash is appropriate provided the constitutional infirmity appears upon the face of the record.

State v. Underwood

4. Indictment and Warrant § 14— motion to quash — evidence of unconstitutional enforcement of ordinance

Upon a motion to quash, the judge may not hear evidence tending to show that the ordinance, valid on its face, it being enforced in a manner which deprives the defendant of his constitutional rights, find the facts and determine the constitutional question upon his findings.

5. Criminal Law § 125— constitutionality of ordinance — grounds not on face of record — special verdict

When a defendant undertakes to contest the constitutionality of an ordinance in a criminal proceeding upon grounds which do not appear upon the face of the record, the question may be determined by a special verdict.

6. Criminal Law § 125— special verdict — sufficiency

A special verdict is defective if any material finding is omitted and will not support a judgment.

7. Criminal Law § 125; Indictment and Warrant § 14— Sunday observance ordinance — constitutionality — motion to quash — error in making findings of fact — special verdict required

The trial judge exceeded his jurisdiction in finding facts on the motion of the operators of convenience stores charged with selling groceries after 6:00 p.m. in violation of the Monroe Sunday Closing Ordinance to quash the warrants on the ground that the convenience stores sell substantially the same items as newsstands, tobacco stores, filling stations and garages which are allowed to remain open all day and that such classification is unreasonable and has no substantial relation to the purpose of the ordinance, since the facts with reference to overlapping items of merchandise offered for sale by the various businesses could have been found only by the jury in a special verdict.

8. Constitutional Law § 14— Sunday observance ordinances — constitutionality

Ordinances prohibiting the exercise of all occupations generally on Sunday except those rendering essential services and providing products necessary to health or contributing to the recreational aspects of Sunday are valid when the exceptions are reasonable and do not discriminate within a class between competitors similarly situated.

9. Constitutional Law § 14; Indictment and Warrant § 14— violation of Sunday observance ordinance — motion to quash warrant

The trial court erred in allowing a motion to quash warrants charging that convenience store managers sold groceries after 6:00 p.m. in violation of the Monroe Sunday Observance Ordinance where the acts charged are violations of the ordinance, and the ordinance on its face does not discriminate against convenience stores insofar as it applies to other grocery stores, for all are required to remain closed on Sunday except between 1:00 p.m. and 6:00 p.m.

APPEAL by the State from *Collier, S.J.,* May 1972 Session of UNION, certified pursuant to G.S. 7A-31(a) for initial appel-

late review by the Supreme Court before determination in the Court of Appeals, docketed and argued at the Fall Term as Case No. 56.

Prosecution for the violation of a Sunday Closing Ordinance. Defendants were convicted by the District Court and appealed to the Superior Court, which allowed their motion to quash the warrants.

Defendants are employees of Thrifty Supermarkets, Inc., which operates in the City of Monroe a supermarket and a number of "convenience stores" denominated Thrif-T-Marts (Marts). Defendant Underwood operated the Mart on Lancaster Avenue; defendant Harkey operated another at Five Points. Separate warrants charge that each defendant did unlawfully expose for sale and did sell at the Mart which he operated "various items of groceries after 6:00 p.m. Sunday, April 9th, 1972," a violation of Monroe City Ordinance 15-36.

The declared purpose of Ordinance 15-36 is "to provide for the due observance of Sunday as a day of rest, to protect and promote the general welfare, safety, and morals of the citizens" by restricting business activities on Sunday in the City of Monroe. To that end, under G.S. 160-52, G.S. 160-200(6), (7), and (10) (now superseded by G.S. 160A-174, 181, 191 (1971)), the City Council enacted the following ordinance:

Section 15-36.

"(a) It shall be unlawful for any person to sell, offer or expose for sale any goods, wares, or merchandise in the city on Sunday (nor shall any store, shop, warehouse, or any other place of business in which goods, wares, or merchandise are kept for sale, be kept open between 12:00 midnight Saturday and 12:00 midnight Sunday), unless such store, shop, warehouse, or other place of business is expressly allowed to open and sell goods under the provisions of this chapter; provided, however, that notwithstanding any other provisions of this chapter, on Sunday no such store, shop, warehouse or other place of business shall sell, offer or expose for sale to the general public any of the following except during the hours of 1:00 p.m. to 6:00 p.m.:

(1) Clothing and wearing apparel;

(2) Clothing accessories;

(3) Furniture, housewares, home, business, or office furnishings;

(4) Household, business or office appliances;

(5) Hardware, tools, paints, building and lumber supply materials;

(6) Jewelry, silverware, watches, clocks, luggage, musical instruments or recordings.

(7) Sporting goods and toys.

"(b) Each separate sale or offer to sell shall constitute a separate offense.

"(c) Bootblacks. Bootblack stands may keep open on Sundays.

"(d) Sale of Christmas greenery. During the month of December of each year, Christmas greenery may be sold on Sunday within the city.

"(e) Cigar and tobacco stores and newsstands. Cigar and tobacco stores or stands and newsstands may keep open on Sunday for the sale of tobacco, tobacco products, papers and periodicals and accessories, together with soft drinks, ice cream, candy and cakes.

"(f) Drug Stores. Drug Stores having a licensed pharmacist may keep open on Sunday from 1:00 p.m. to 6 o'clock p.m., for all purposes including the operation of soda fountains located therein. Notwithstanding the foregoing provision emergency sales of drugs and medicines may be made at any time.

"(g) Exhibition of games, sports, moving pictures, etc.

(1) Except as otherwise provided in this section, it shall be unlawful for any person to engage in or present on Sunday any exhibition of play, game, sport or any moving picture or theatrical exhibition for which any admission is charged the witnessing public.

(2) It shall be lawful for any person to engage in or present any exhibition of moving pictures, baseball, football, basketball, golf, tennis, or dog and horse shows on Sundays, between the hours of 12:00 noon and 12:00 midnight for which any admission is charged the witnessing public. It shall also be lawful to continue to its conclusion a sports event or motion

picture commenced before twelve midnight on Saturday night. No tickets shall be sold or taken up on Sunday during the prohibited hours for any such exhibition.

(3) Peanuts, popcorn, chewing gum, soft drinks, ice cream, candy, cakes, wrapped sandwiches and tobacco may be sold on Sundays at all lawful exhibitions allowed by Subsection (2) immediately above.

"(h) Sale of fruits and melons. Stands for the sale of fruits and melons may remain open on Sundays during the hours of 1:00 p.m. to 6 p.m. and such establishments shall remain closed on Sunday except during these hours.

"(i) Garages and filling stations. Public garages and filling stations may be kept open for the hiring and storage of automobiles and for the sale of gasoline, oils, parts and accessories, soft drinks, ice cream, candy, cakes, and tobacco at all hours.

"(j) Grocery stores and curb markets. Grocery stores and curb markets may remain open on Sunday during the hours of 1:00 p.m. to 6:00 p.m. for the sale of any items not otherwise prohibited by law. All such establishments, including those selling confectionery items, shall remain closed on Sunday except during these hours.

"(k) Hotels, boardinghouses, restaurants, etc.

(1) Hotels, boardinghouses, cafes, restaurants, confectioneries and wiener stands are permitted to keep open on Sundays for their usual business, including the sale of food, cigars, cigarettes, tobacco and soft drinks.

(2) It shall be unlawful for any person to conduct or keep any restaurant or cafe within the City on Sunday, except such as are also conducted as restaurants or cafes on other days of the week.

(3) A confectionery, as used in this section, shall mean a place where sweets are sold, such as ice cream, candies, cakes, soft drinks, doughnuts and wrapped sandwiches.

"(l) Ice manufacturers and dealers.

(1) Manufacturers and dealers of ice alone may keep open for the sale of ice at all times, but delivery of ice other than at the plant or premises of such manufacturer or dealer is hereby forbidden, except as hereinafter stated.

(2) Ice may be delivered to any hospital at any time or to ice refrigerated railroad cars containing perishable fruits or other perishable products.

"(m) Ice Cream Manufacturers, dairies and creameries. Manufacturers of ice cream, dairies and creameries may keep open on Sunday and at all times for the sale of ice cream, milk, butter and frozen dairy products.

"(n) Newspapers and magazines. Nothing in this chapter shall be construed to prohibit the publication of newspapers or the sale of newspapers or magazines by newsstands or newsboys in and about the streets.

"(o) The sale of live bait, such as worms, minnows, crickets and shrimp may be sold on Sunday.

"(p) Barbershops. It shall be unlawful for any barbershop in the city to open for business on Sunday.

"(q) Beer and Wine. The sale of beer and/or wine from 11:45 o'clock p.m. on each Saturday until 7:30 o'clock a.m. on the following Monday shall be prohibited.

"(r) If any section, subsection, sentence, clause, or phrase of this ordinance is, for any reason, held to be invalid, such decision shall not affect the validity of the remaining portions of this ordinance. The City Council hereby declares that it would have passed this ordinance and each section, subsection, clause, and phrase thereof, irrespective of the fact that any one (1) or more sections, subsections, sentences, clauses, or phrases be declared invalid."

This ordinance became effective on 8 October 1970.

When defendants' cases were called for trial each moved to quash the warrant against him on the ground that Ordinance 15-36 is unconstitutional in that it arbitrarily discriminates between persons and classes, and that it bears no reasonable relation to "The City Council's legitimate objective."

In support of the motion to quash, Judge Collier heard evidence offered by defendants and found facts substantially as detailed below:

For approximately two years Thrifty Supermarkets, Inc., has operated seven "convenience stores" in Monroe. Each store has four gasoline pumps, two for regular gasoline and two

for high test. Gasoline, motor oil, and auto products are among the principal items sold. The stores also carry health and beauty aids, tobacco products, popcorn, bag ice, soft drinks, candy, cakes, wrapped sandwiches, general grocery products, magazines and newspapers, children's books, coloring books, beer, wine, bread, dairy products, and ice cream. The stores do not have a produce market.

Prior to the opening of the Marts no store in Monroe offered the same combination of goods. The convenience stores are "a relatively new concept in merchandising." The Marts buy the same licenses as do service stations, newsstands, and tobacco stores on the same products.

The local newsstands and cigar stores, which are permitted to remain open all day Sunday, sell tobacco products, popcorn, newspapers, periodicals, sandwiches, doughnuts, bread, milk, ice cream, potato chips, and records as their principal items. The Marts do not sell as full a line of merchandise as a supermarket. However, they sell substantially the same items as filling stations, tobacco stores, and newsstands.

During the month of April 1972, including the period said stores were open seven days a week, gasoline sales amounted to 16.8% of total sales. Of the Marts' total Sunday sales during April 1972, 23.4% were of gasoline. Except on the day of the arrests the stores were open only from 1:00 p.m. to 6:00 p.m. each Sunday. Estimated sales of tobacco and tobacco products, papers and periodicals, ice, soft drinks, ice cream, candy and cakes, motor oils and related products, doughnuts and wrapped sandwiches, milk, butter, and frozen dairy products, during a seven-day week amounted to 20-25% of gross sales. During Sunday hours the sale of these items, together with the sale of gasoline, amounted to 80-85% of gross sales. The percentage of sales of those items is higher on Sunday because the sale of beer and wine is prohibited on that day.

Upon the foregoing findings of fact Judge Collier concluded that the ordinance violates the equal protection clauses of the State and Federal Constitutions and has no reasonable relationship to the accomplishment of the declared purpose of the ordinance. Whereupon he adjudicated the ordinance unconstitutional and allowed defendants' motion to quash the warrants. The State appealed.

---

State v. Underwood

---

*Attorney General Morgan; Associate Attorney Earnhardt; and Associate Attorney Ann Reed for the State.*

*Griffin and Clark for defendant appellees.*

SHARP, Justice.

[1, 2] In this jurisdiction the rule is well established that a warrant may be quashed only for its failure to charge a crime or a lack of jurisdiction of the court to try the case—defects which appear on the face of the record. In ruling upon a motion to quash the judge rules only upon a question of law. He is not permitted to consider "extraneous evidence," that is, the testimony of witnesses or documents other than the specific statutes or ordinances involved. "Therefore, when the defect must be established by evidence *aliunde* the record, the motion must be denied." *State v. Cochran,* 230 N.C. 523, 525, 53 S.E. 2d 663, 665 (1949). *See also State v. Vestal,* 281 N.C. 517, 189 S.E. 2d 152 (1972) ; *State v. Lee,* 277 N.C. 242, 176 S.E. 2d 772 (1970) ; *State v. McBane,* 276 N.C. 60, 170 S.E. 2d 913 (1969) ; *State v. Cooke,* 248 N.C. 485, 103 S.E. 2d 846 (1958), *appeal dismissed,* 359 U.S. 951, 3 L.Ed. 2d 759, 79 S.Ct. 737 (1959) ; *State v. Andrews,* 246 N.C. 561, 99 S.E. 2d 745 (1957).

With one exception, the same rule applies to a motion to quash a bill of indictment. *See State v. Bass,* 280 N.C. 435, 186 S.E. 2d 384 (1972) (authorities collected at 450-51, 186 S.E. 2d at 395) ; *State v. Allen,* 279 N.C. 492, 183 S.E. 2d 659 (1971) ; *State v. Wilkes,* 233 N.C. 645, 65 S.E. 2d 129 (1951). The exception relates to conditions precedent to the finding of a valid bill of indictment by the grand jury. G.S. 9-23 (1969) provides that defects or irregularities in the drawing or organization of the grand jury must be challenged by a motion to quash the indictment, made before the petit jury is sworn and impaneled to try the issue. Upon such a challenge the judge hears evidence and finds the facts upon which he bases his conclusions of law. *State v. Wright,* 274 N.C. 380, 163 S.E. 2d 897 (1968) ; *Miller v. State,* 237 N.C. 29, 74 S.E. 2d 513, *cert. denied,* 345 U.S. 930, 97 L.Ed. 1360, 73 S.Ct. 792 (1953).

[3] When the defense is that the warrant or indictment charges the violation of an unconstitutional ordinance or statute, the motion to quash is appropriate *provided* the constitutional infirmity appears upon the face of the record. "In passing upon such motion, the court treats the allegations of fact

State v. Underwood

in the warrant, or indictment, as true and considers only the record proper and the provisions of the statute or ordinance." *State v. Vestal, supra* at 520-21, 189 S.E. 2d at 155; *State v. Anderson,* 275 N.C. 168, 166 S.E. 2d 49 (1969); *State v. Furio,* 267 N.C. 353, 148 S.E. 2d 275 (1966). *See also State v. Greenwood,* 280 N.C. 651, 187 S.E. 2d 8 (1972); *State v. Brewer,* 258 N.C. 533, 129 S.E. 2d 262, *appeal dismissed,* 375 U.S. 9, 11 L.Ed. 2d 40, 84 S.Ct. 72 (1963); *State v. Hales,* 256 N.C. 27, 122 S.E. 2d 768 (1961).

[4] If an ordinance or statute upon which a warrant or indictment is based "is generally constitutional and for some circumstance peculiar to the situation of accused is unconstitutional that is a matter which is properly triable under the general issue or a plea of not guilty." 16 C.J.S. *Constitutional Law* § 96(b), at 344 (1956). Upon a motion to quash the judge may not hear evidence tending to show that the ordinance, valid on its face, is being enforced in a manner which deprives the defendant of his constitutional rights, find the facts, and determine the constitutional question upon his findings. In a criminal prosecution in which the defendant contests his guilt he may not "waive his constitutional right of trial by jury. . . . [T]he determinative facts cannot be referred to the decision of the court even by consent—they must be found by the jury." *State v. Muse,* 219 N.C. 226, 227, 13 S.E. 2d 229 (1941) (citations omitted). *See also State v. Hill,* 209 N.C. 53, 182 S.E. 716 (1935). If the judge, on a motion to quash the warrant or indictment, were to hear evidence, find the facts against the defendant, and overrule his motion, upon trial of the issue before the jury, the defendant would not be bound by the facts which the judge had found.

*State v. Dobbins,* 277 N.C. 484, 178 S.E. 2d 449 (1971), a case in which defendant was prosecuted for the unlawful possession of a shotgun in an area in which a declared emergency existed and for being on a public street in violation of an emergency curfew ordinance, does not indicate a departure from the foregoing rule. In *Dobbins,* at the defendant's instance and without any objection by the solicitor, the judge heard evidence upon a motion to quash the warrant upon the grounds (1) that the statutes and ordinances under which the mayor of Asheville had issued a public proclamation declaring a state of emergency were unconstitutional; and (2) no actual state of emergency existed at the time one was proclaimed. Upon findings of fact,

fully supported by all the evidence, the court found that an actual state of emergency had existed and that the statutes and ordinances under which the mayor had acted were constitutional. He denied the motion to quash upon all the grounds asserted, and the case proceeded to trial upon the warrant. The jury found defendant guilty upon both counts. Upon appeal, defendant did not assign as error the court's finding that an actual state of emergency had existed. The battleground was whether the statutory scheme of Article 36A (Riots and Civil Disorders) of Chapter 14 of the General Statutes of North Carolina contravened the First, Fourth, Ninth, and Fourteenth Amendments to the United States Constitution and Article I, Section 17, of the North Carolina Constitution—questions of law properly determined upon a motion to quash.

[5, 6] When a defendant undertakes to contest the constitutionality of an ordinance or statute in a criminal proceeding upon grounds which do not appear upon the face of the record, the question may be determined by a special verdict. "[S]pecial verdicts are permissible in criminal cases, but when such procedure is had, all the essential facts must be found by a jury." *State v. Straughn,* 197 N.C. 691, 692, 150 S.E. 330 (1929). A special verdict is defective if any material finding is omitted and will not support a judgment. *State v. Ellis,* 262 N.C. 446, 137 S.E. 2d 840 (1964) (authorities collected at 451, 137 S.E. 2d at 845) ; *State v. High,* 222 N.C. 434, 23 S.E. 2d 343 (1942) ; *State v. McIver,* 216 N.C. 734, 6 S.E. 2d 493 (1940) ; *State v. Gulledge,* 207 N.C. 374, 177 S.E. 128 (1934) ; *State v. Hanner,* 143 N.C. 632, 57 S.E. 154 (1907). Special verdicts are attended with many hazards. *See State v. Lueders,* 214 N.C. 558, 200 S.E. 22 (1938) ; *State v. Allen,* 166 N.C. 265, 80 S.E. 1075 (1914) ; 3 Strong, N. C. Index 2d, *Criminal Law* § 125 (1967) ; Comment, *Criminal Law—The Right of the State to Appeal in Criminal Cases,* 42 N.C.L. Rev. 887, 891-94 (1964) ; Note, 13 N.C.L. Rev. 321 (1935). To avoid the pitfalls which lie in wait for even the most circumspect, the constitutionality of a Sunday ordinance is usually tested in a civil action to enjoin the enforcement of the ordinance under the well-established exception which permits such actions upon the allegation that injunctive relief is essential to the protection of property rights and the rights of persons against injuries otherwise irremediable. *Whitney Stores v. Clark,* 277 N.C. 322, 177 S.E. 2d 418 (1970) ; *Mobile Homes Sales v. Tomlinson,* 276 N.C. 661, 174 S.E. 2d 542 (1970) ; *Kresge Co. v. Tomlinson,* 275 N.C. 1, 165 S.E. 2d

236 (1969); *Surplus Co. v. Pleasants,* 264 N.C. 650, 142 S.E. 2d 697 (1965); *Charles Stores v. Tucker,* 263 N.C. 710, 140 S.E. 2d 370 (1965); *Clark's Charlotte, Inc. v. Hunter,* 261 N.C. 222, 134 S.E. 2d 364 (1964); *Surplus Store, Inc. v. Hunter,* 257 N.C. 206, 125 S.E. 2d 764 (1962).

[7]  In this case defendants are charged with selling groceries after 6:00 p.m., a time when the ordinance requires *all* grocery stores in Monroe to be closed. They defend upon two grounds: (1) The Marts, in addition to other things, sell substantially the same items as newsstands and tobacco stores, filling stations, and garages. (2) A classification which permits the latter to remain open all day and requires the former to be closed except between the hours of 1:00 p.m. and 6:00 p.m. is unreasonable and has no substantial relation to the evil the ordinance seeks to eliminate. Judge Collier, treating this criminal case as if it were a civil action, found facts from which he drew legal conclusions in accordance with defendants' contentions and quashed the warrants. In finding facts on the motion to quash the warrants the trial judge exceeded his jurisdiction. In this case facts with reference to overlapping items of merchandise offered for sale by the Marts and by newsstands, filling stations and other businesses permitted to remain open all day could have been found only by the jury in a special verdict.

[8]  This Court has held many times that Sunday Observance laws have a reasonable relationship to the public welfare and are, therefore, a proper exercise of the police power. Ordinances prohibiting the exercise of all occupations generally on Sunday except those rendering essential services and providing products necessary to health or contributing to the recreational aspects of Sunday have been upheld when the exceptions are reasonable and do not discriminate within a class between competitors similarly situated. *Kresge Co. v. Tomlinson, supra; Charles Stores v. Tucker, supra; Clark's Charlotte, Inc. v. Hunter, supra.*

[9]  The Monroe Ordinance on its face does not discriminate against the Marts insofar as it applies to other grocery stores, for all are required to remain closed except between 1:00 p.m. and 6:00 p.m. *See Charles Stores v. Tucker, supra* at 715, 140 S.E. 2d at 374. The acts with which defendants are charged in the warrants are violations of the ordinance. *Prima facie,* no constitutional infirmity in the ordinance bars this prosecution. The motion to quash, therefore, should have been overruled. *State v. Chestnutt,* 241 N.C. 401, 85 S.E. 2d 297 (1955).

The judgment quashing the warrants is reversed, and this cause is remanded to the Superior Court of Union County for trial.

Reversed.