STATE OF NORTH CAROLINA v. PAUL GILBERT ALLRED, AUBREY L. DAVIS, JR., AND IRIS BLUE DAVIS

No. 735SC197

(Filed 17 April 1974)

1. **Indictment and Warrant § 9; Riot and Inciting to Riot § 2— state of emergency — violation of restriction — sufficiency of warrant**

    In a prosecution of defendants for wilfully violating provisions of a proclamation issued by the Chairman of the Board of County Commissioners of New Hanover County which declared a state of emergency to exist within said county, the trial court properly denied defendants' motions to quash the warrants, since the warrants charged defendants with failure to comply with the proclamation by using a named public park between the hours of 7:00 p.m. and 7:00 a.m. on 14 November 1971.

2. **Municipal Corporations § 29— proclamation of state of emergency — validity**

    Trial court did not err in holding as a matter of law that a proclamation issued by the Chairman of the Board of County Commissioners of New Hanover County declaring a state of emergency to exist within said county and imposing limited restrictions was valid where there was evidence that the Chairman, on the basis of personal knowledge and reliable information, had reasonable grounds to believe and did believe that a state of emergency as defined in G.S. 14-288.1 (10) existed and where the restrictions imposed were extremely limited and were clearly among those authorized by G.S. 14-288.12(b).

3. **Constitutional Law § 20— proclamation of state of emergency — uniform enforcement of restriction**

    Though the activities of defendants and an organization to which they belonged may have been responsible for issuance of a proclamation declaring a state of emergency to exist and imposing certain restrictions, the proclamation was not applied in a discriminatory manner against defendants or their organization.

4. **Constitutional Law § 18— use of public parks prohibited — rights of speech and assembly not abridged**

    In a proclamation declaring a state of emergency to exist in New Hanover County, a restriction forbidding the use of public parks between the hours of 7:00 p.m. and 7:00 a.m. did not abridge defendants' First Amendment rights to free speech and assembly, since no restraint whatsoever was imposed upon speech, and the only restraint imposed on assembly was clearly reasonable under the circumstances.

5. **Criminal Law § 109— peremptory instructions**

    Where the uncontradicted evidence, if true, establishes a defendant's guilt as a matter of law, the court may instruct the jury to return a verdict of guilty if it finds such evidence to be true beyond a reasonable doubt, and the peremptory instruction was appropriate and in approved form in this case.

APPEAL by defendants from *Clark, Judge,* 7 August 1972 Criminal Session of Superior Court held in NEW HANOVER County.

Each of the three defendants was charged by warrant with willfully violating provisions of a proclamation issued by the Chairman of the Board of County Commissioners of New Hanover County which declared a state of emergency to exist within said county, such offense being a misdemeanor under G.S. 14-288.13(d). After convictions in the District Court, defendants appealed to the Superior Court where they pled not guilty and were tried de novo, the three cases being consolidated for trial. The State's evidence showed:

At a meeting held on 5 February 1971 the Board of County Commissioners of New Hanover County enacted an ordinance permitting imposition of certain prohibitions and restrictions during a state of emergency, being the same prohibitions and restrictions as enumerated in G.S. 14-288.12(b), and delegating to the Chairman of the Board the authority to determine and proclaim the existence of a state of emergency and during such state of emergency to impose authorized prohibitions and restrictions. Following a period of public turmoil in New Hanover County in the fall of 1971, Meares Harriss, Jr., the Chairman of the Board of County Commissioners of New Hanover County, at 6:30 p.m. on 12 November 1971 issued a proclamation proclaiming that a state of emergency existed within New Hanover County and forbade, among other things, "the use of any public park in New Hanover County between the hours of 7:00 p.m. and 7:00 a.m." This proclamation was issued after Chairman. Harriss had met at police headquarters with the Chief of Police, the Sheriff, the Mayor, and other officials, and after he heard a tape recording of a speech which had been made on the preceding evening by LeRoy Gibson, head of an organization known as Rights of White People (ROWP) at a meeting sponsored by ROWP at Hugh MacRae Park, a public park in New Hanover County located outside but near the City of Wilmington. Copies of the proclamation were given to the news media, and at approximately 6:40 p.m. on 12 November 1971 an officer of the New Hanover County Sheriff's Department went to the Hugh MacRae Park, where another meeting sponsored by ROWP was in progress. The officer read the proclamation to the crowd of approximately 100 people assembled at the meeting, and those present then left the park. Two days later, on Sunday, 14 No-

State v. Allred

vember 1971, a crowd again gathered at Hugh MacRae Park. At about 6:40 p.m. the officer again went to the park and several times read the proclamation over a bullhorn, each time stating that if those present did not leave the park they would be arrested. The three defendants were among those present in the park. When they refused to leave at 7:00 p.m., they were arrested.

At the close of the State's evidence, defendants moved for nonsuit, whereupon the trial judge entered the following order:

"Upon the conclusion of the State's evidence all defendants having made motions for judgment of nonsuit, and the undersigned Judge Presiding having determined that there had not been heretofore in these causes a finding of facts and determination of the validity of the proclamation, dated 12 November, 1971, which the defendants are charged with violating, though motions to quash have been previously denied, and after admitting and accepting evidence beyond the scope of jury trial for the purpose of making such determination, the Court finds the following facts:

"During the Fall of 1971, which continued unabated until 12 November of that year, there was turmoil and strife, including burnings, assaults, sniping, and looting in the City of Wilmington, and in some isolated instances in areas near but outside the city such as Flemington and Green Meadows.

"Hugh MacRae Park was a public park of New Hanover County, adjoining the limits of the City of Wilmington, consisting of a wooded area, playgrounds, and athletic fields, and with a cleared picnic area located approximately in its center.

"The Rights of White People Association, commonly referred to as 'ROWP' had a chapter in New Hanover County, with membership residing in the county, said chapter being headed by the defendant Paul G. Allred, and said Association being headed by LeRoy Gibson of Onslow County.

"Several weeks prior to 12 November, 1971, the local chapter held private and public meetings, most of the public

meetings being held in the picnic area of Hugh MacRae Park.

"LeRoy Gibson made several speeches prior to 11 November, 1971, and advocated and encouraged, among other things, that the audience bring guns and that he would send them so armed on patrols in the city for the purpose of stopping the race war by force. Prior to this date ROWP had sent out armed patrols in the city. A ROWP mob with guns had marched to the home of a public school officer, and at another time to the home of a plant foreman who had fired a ROWP member. Armed members of ROWP stopped persons going through MacRae Park while meetings were being held in the picnic area.

"A public meeting of ROWP was held in the picnic area of Hugh MacRae Park on the night of 11 November, 1971, and the speech of LeRoy Gibson was recorded on tape by Deputy Sheriff Larry Hayes, and later transcribed and received in evidence. In said speech Gibson advocated and requested that those present bring guns and ammunition to the next meeting in the park at 7:00 p.m. on 12 November, 1971, after which he would send them on armed patrol.

"A meeting was called and held at about 5:00 p.m. on 12 November, 1971, when Meares Harriss, Chairman, New Hanover Board of Comissioners, the county sheriff, the mayor of the city, chief of police of the city, and other officers were present. Those present were concerned and feared that in view of the conditions of strife and turmoil such a meeting of ROWP, to which the public was invited, and to which it was urged that attending people bring guns and ammunition, for the purpose of armed patrol, would result in a confrontation between such militant whites and militant blacks which could and probably would spread and balloon into a race riot in the city and county of such proportions that public order could not be maintained.

"Thereupon Chairman Harriss at about 6:30 p.m., signed the proclamation prohibiting use of county parks by the public between the hours of 7:00 p.m. and 7:00 a.m., (Exhibit 2), an ordinance under the Omnibus Riot and Civil Disorder Act having been enacted on 5 February 1971.

"Deputy Hayes was immediately dispatched to the park with the ordinance, and he arrived there about 6:40 p.m., and read it to the approximately 100 people assembled there for the ROWP meeting.

"Copies of the proclamation were delivered to all communication media in the city and county.

"And the Court concludes the following:

"That Chairman Harriss on the basis of personal knowledge and reliable information had reasonable grounds to believe and did believe that a state of emergency, as defined by said Riot Act, existed or was imminent, and his issuance of the proclamation was not arbitrary and was not capricious, and was fully justified under the existing conditions; that the proclamation was lawful and valid; that the State has offered competent evidence tending to show a violation of the proclamation by the defendants as charged.

"Therefore, the motions for judgment of nonsuit by each of the defendants are denied.

                              "/s/ Edward B. Clark
                                   "Judge Presiding"

Each of the defendants testified that at the time they were arrested in Hugh MacRae Park after 7:00 p.m. on 14 November 1971 they knew of the proclamation forbidding the use of the park between the hours of 7:00 p.m. and 7:00 a.m., and that they deliberately remained in the park because they felt that no state of emergency in fact existed and that their First Amendment Constitutional rights were being denied.

The court instructed the jury that if "you the jury should find beyond a reasonable doubt the facts to be as all of the evidence tends to show, then it would be your duty to return a verdict of guilty as to each defendant, but if the jury is not so satisfied, it would be your duty to return a verdict of not guilty."

The jury found each of the three defendants guilty as charged. Judgments were imposed sentencing each defendant to prison for 30 days, suspended on condition each defendant pay a fine of $25.00 and costs. Defendants appealed.

---

---

*Attorney General Robert Morgan by Assistant Attorney General Henry T. Rosser for the State.*

*Smith, Patterson, Follin & Curtis by Norman B. Smith for defendant appellants.*

PARKER, Judge.

Prior to arraignment for trial de novo in the Superior Court, defendants appeared through counsel before Judge Winifred T. Wells, presiding at the 17 July 1972 Criminal Session of Superior Court in New Hanover County, and moved to quash the warrant in each case on the grounds (1) the proclamation declaring the state of emergency referred to G.S. 160-20.2, which provided for cooperation between law enforcement officers of different political subdivisions in event of a declared emergency, and made no reference to G.S. 14-288.12 (sic) ; (2) the proclamation was issued without any notice and hearing for defendants; and (3) there was no clear and present danger existing, either when the proclamation was issued or when defendants were arrested, which would justify interfering with their freedom of expression and assembly. The motions to quash were denied, which action is the subject of appellants' first assignment of error. There was no error in denial of the motions to quash.

[1] "In this jurisdiction the rule is well established that a warrant may be quashed only for its failure to charge a crime or a lack of jurisdiction of the court to try the case—defects which appear on the face of the record. In ruling upon a motion to quash the judge rules only upon a question of law. He is not permitted to consider 'extraneous evidence,' that is, the testimony of witnesses or documents other than the specific statutes or ordinances involved." *State v. Underwood,* 283 N.C. 154, 195 S.E. 2d 489. In the present cases the warrants charged defendants with willful failure to comply with the proclamation issued by the Chairman of the Board of County Commissioners by using Hugh MacRae Park between the hours of 7:00 p.m. and 7:00 a.m. on 14 November 1971. Use of the park at that time was specifically prohibited by the proclamation. Issuance of the proclamation was authorized by the ordinance, which in turn was authorized by G.S. 14-288.13, by which a portion of the State's police power was delegated to the governing bodies of the counties of this State. A similar delegation of police power to the governing bodies of municipalities, made

by G.S. 14-288.12, was held constitutional in *State v. Dobbins,* 277 N.C. 484, 178 S.E. 2d 449. That the proclamation made no reference to the statute in no way affected its validity; the existence of the statute, not reference to it in the proclamation, was all that mattered. Thus, the face of the warrants charged defendants with committing an act which by G.S. 14-288.13 (d) is made a misdemeanor. No defect appears on the face of the record, and defendants' motions to quash the warrants were properly denied by Judge Wells.

[2] Upon trial of these cases before Judge Edward B. Clark and a jury, Judge Clark ruled as a matter of law that the proclamation was valid and constitutional, and accordingly instructed the jury that the only question before the jury was whether the defendants had violated the proclamation. In this we find no error. The limited delegation of the State's police power which our Legislature deemed wise to grant by G.S., Chap. 14, Art. 36A, to local governmental units in order to assist them in maintaining public peace and order during periods of emergency was, as above noted, held constitutional in *State v. Dobbins, supra.* That statute authorizes local governments to permit imposition of certain specified and limited prohibitions and restrictions during a "state of emergency," which is defined by G.S. 14-288.1 (10) as:

> "The condition that exists whenever, during times of public crises, disaster, rioting, catastrophe, or similar public emergency, public safety authorities are unable to maintain public order or afford adequate protection for lives or property, or whenever the occurrence of any such condition is imminent."

The statute, G.S., Chap. 14, Art. 36A, is the result of experience of recent years which has made us all too painfully aware that local disturbances may suddenly erupt with tragic consequences into massive public disorders. The statute wisely provides for placing in local executive officials, whose first and primary duty it is to maintain public order, powers adequate to their responsibilities. Thus, the initial decision as to whether a "state of emergency" in fact exists must be made by those who bear primary responsibility and who are closest to the scene. Their decision, however, while entitled to great respect, is not conclusive or entirely free from judicial review. The local official may not act arbitrarily or without some factual basis to support his determination that a state of emergency in fact exists,

and the prohibitions and restrictions which he imposes must be among those authorized by the statute, G.S. 14-288.12(b). The scope of judicial review in cases such as this is thus limited to the type of review which traditionally is for the judge, and not for the jury, to perform. In the present case the record amply supports Judge Clark's determination that Chairman Harriss, on the basis of personal knowledge and reliable information, had reasonable grounds to believe and did believe that a state of emergency as defined in the statute existed and that his issuance of the proclamation was not arbitrary or capricious. The extremely limited restrictions imposed by the proclamation, which only prohibited use of the public parks at night or forbade "transportation of dangerous arms or substances," were clearly among those authorized by G.S. 14-288.12(b). Judge Clark committed no error in determining as a matter of law that the proclamation was valid and in so instructing the jury.

[3] We note appellants' contention that the proclamation, though valid on its face, cannot be a proper basis for a criminal charge against them because it was issued and applied in a discriminatory manner. In this connection they contend that it was issued because of and was primarily directed against the activities of ROWP and its members. If this be so, however, there was no evidence that the ordinance was enforced in any discriminatory manner. On the contrary, the evidence showed that others desiring to use the park for such innocent pursuits as playing baseball were similarly denied its use during the prohibited hours. That the activities of ROWP may have been a major factor in bringing on the conditions which prompted declaration of the state of emergency furnishes no valid support for the contention that that organization and its members were unfairly discriminated against. Their activities may have triggered issuance of the proclamation, but once it was issued it was uniformly enforced as to all, at least insofar as the present record discloses.

[4] Nor are we impressed by appellants' contentions that enforcement of the proclamation abridged their First Amendment rights to free speech and to peaceably assemble. No restraint whatsoever was imposed upon speech, and the only restraint imposed on the right of assembly was the prohibition against use of public parks during nighttime hours. Under the circumstances, this very limited restriction was clearly reasonable.

Consumers Power v. Power Co.

[5]  We also find no merit in appellants' several assignments of error to the court's charge to the jury. Where, as here, the uncontradicted evidence, if true, establishes a defendant's guilt as a matter of law, the court may instruct the jury to return a verdict of guilty if it finds such evidence to be true beyond a reasonable doubt. *State v. Kimball,* 261 N.C. 582, 135 S.E. 2d 568. The peremptory instruction was appropriate in the present case and was in approved form.

In the trial and judgments imposed we find

No error.

Chief Judge BROCK and Judge HEDRICK concur.