## J. T. HARRIS v. W. P. SINGLETARY.

### (Filed 20 April, 1927.)

**1. Evidence—Written Instruments—Letters—Original Writings—Copies.**

The original of a letter sought to be introduced in evidence, unless collateral to the controversy or issue, is the best evidence of its contents, and a copy may not be received unless it is shown by competent witnesses that it had been destroyed or lost, and could not be found after a reasonable search.

**2. Same—Clerks of Court—Justices' Courts.**

Where a letter introduced on a trial of a criminal action is transmitted on defendant's appeal to the clerk of the Superior Court, a copy thereof of record may not be testified to on the trial of a civil action for false arrest in the Superior Court, when involved in the issue, without showing the loss of the original by the clerk to whom it had been given, or showing by a recognized legal way that the original could not reasonably have been introduced. *Semble*, a justice's court is partly one of record under C. S., 1482.

**3. Evidence—Appeal and Error—Admissions.**

Where the defendant in an action for damages for false arrest has admitted substantially the contents of a letter material to the inquiry, and not collaterally involved thereon, the erroneous admission of a copy thereof is cured.

**4. Criminal Law—False Arrest—Evidence—Malice—Admissions — Statutes—Appeal and Error.**

Where the justice of the peace has testified on the trial to recover damages for false arrest that he considered the criminal action "frivolous and malicious," and had taxed the defendant (prosecutor) with cost, the erroneous admission of this evidence is cured by the defendant's admission that he had paid the cost thus taxed against him. C. S., 1288.

**5. Criminal Law—Appeal and Error.**

The defendant in a criminal action may appeal from a justice's court to the Superior Court from an adverse judgment taxing him with cost.

**6. False Arrest—Termination of Criminal Action—Evidence—Judgment.**

It is necessary for the plaintiff in an action to recover damages for false arrest, to show the successful determination of the criminal action, and the judgment thereon is properly admitted in evidence when confined to the required purpose.

**7. False Arrest—Malice—Evidence—Criminal Law.**

Where the prosecutor in a criminal action has appealed from an adverse judgment of a justice of the peace taxing him with costs, and has afterwards withdrawn his appeal and paid the cost, it is sufficient evidence of malice, etc., to be submitted to the jury.

**8. Arrest and Bail—False Arrest—Malice—Issues—Questions for Jury.**

In order to issue execution against the person of the defendant in an action to recover damages for false arrest, an issue upon the fact of actual or express malice must have been submitted to and affirmatively found by the jury.

HARRIS *v.* SINGLETARY.

APPEAL by defendant from *Sinclair, J.,* and a jury, at October Term, 1925, of CRAVEN.

This is a civil action instituted by plaintiff against defendant for "falsely and maliciously, and without any reasonable or probable cause", procuring a warrant from a justice of the peace and having him arrested on a charge of larceny on 5 June, 1921, of a *certain letter.* Defendant denied the material allegations.

The warrant was sworn out on 28 December, 1921, before W. R. Wood, a justice of the peace. The case was removed at the instance of plaintiff, and it was sent by Wood to J. R. Hardy for trial. It was heard on 11 January, 1922, and Hardy dismissed the case as *frivolous and malicious,* and taxed Singletary, the defendant in this case, with the cost. Singletary appealed and Hardy handed the papers to the clerk of the Superior Court. The appeal was withdrawn on 24 January, 1922, and Singletary paid the cost.

Plaintiff testified in part: "I am in the store fixture business, and office fixtures, being secretary-treasurer and manager of The Scott Register Company. When I am on the road I call on the trade selling fixtures and am out about fifty per cent of my time. The Scott Register Company had sold Mr. Singletary a refrigerator, and there was a difference with reference to the cost of handling it, and he had left it in the station. That suit was closed in court and we got a judgment against him for it. . . . Singletary claimed that I took a letter that he considered of importance in that civil suit. The letter was addressed to Graham & Singletary, and was in regard to the cancellation of an order. Singletary handed it to me to read, and when I finished I said 'What's your nearest telephone?' and he said 'You can go next door and get one,' and I went out with the letter in my hand, and I folded it up and put it in my pocket, and when I came back Graham asked me for the letter, and I said I didn't want it, that I had a copy of it. He didn't object to my taking the letter out of the store at all. He handed me the wide-open letter. When I gave the letter back I told Singletary I was going to make him pay for the refrigerator or cost of handling it, which I did, and the court gave me a judgment for it. He considered that the letter referred to as being taken out of the store by me was a part of his defense in the civil action as to the cancellation of the order. That particular letter was the only one he was concerned about." He further testified that Singletary testified at the trial before the justice of the peace that he, plaintiff, stole the letter and was a menace to society. Singletary prepared a letter to the like effect and read it at the trial; said he was a common thief, and he was not so much interested in the money proposition, but as a menace to society to have him locked up. He testified to the humiliation of his arrest and the

effect on his business. The trial before the justice of the peace was held in the presence of about twenty-five people.

The warrant was sworn out in Wilson County, and the sheriff arrested him in Craven County, where he lived. He was tried in Wilson County.

Defendant testified to the effect that he was in partnership with one George W. Graham. "Mr. Graham received a letter from the Scott Register Company about countermanding an order for a refrigerator after we had dissolved partnership. Mr. Graham had possession of the letter. In consequence of that information, I swore out a warrant against Mr. Harris for stealing the letter." . . . On cross-examination the plaintiff's counsel asked Mr. Singletary if he had not been told in October, when he returned from Asheville, by Miss Addie May Graham both, that on the day in June when Mr. Harris had taken the letter to go next door to the phone, he returned the letter within a few minutes, on the same day, to Mr. Graham, and he replied that he had; and then the plaintiff's counsel asked Mr. Singletary if he had not known all the time, from October to 28 December, 1921, when he brought the action against Mr. Harris for stealing the letter, that Mr. Harris had brought the letter back to Mr. Graham within a few minutes after taking it to the phone. This was admitted by defendant.

Mr. Graham introduced the letter, which was from The Scott Register Company to Graham & Singletary. The letter was signed by W. F. Dunn, assistant manager, dated 2 June, 1921, in which it was stated that they were holding up shipment on a refrigerator as per instructions. Graham testified as to the matter as follows: "At the time we received this letter the firm of Graham & Singletary was dissolved. I know Mr. J. T. Harris, the plaintiff, and shortly after I received the letter he came to my store at 915 East Nash Street, Wilson, N. C. He asked me why I hadn't taken the refrigerator out of the depot. I told him because I didn't think I could handle it. I told him that the order had been canceled, and he said not. I told him it had, and I told him that I could show him that it had, and he said he didn't think so, so I got this letter, and was standing back of the counter and showed it to him, and while standing there talking to me some colored woman come in about something in the store, and I turned and walked down there, and he taken the letter and put it in his pocket and went out with the letter. He went to J. L. Matthews' old store, and as a result of something my daughter said, I went up to J. L. Matthews' store to look for Mr. Harris, and I told him I wanted to see him back to the store a few minutes, and he said all right, and I told him the business was that I wanted that letter. He said he didn't see what I wanted with it; that it wouldn't do me any good, but I said well it belonged to me. He hesitated, and I told him he would have to give it up before he left the

store, and he threw it on the counter and said, 'take it,' but it wouldn't do me any good. At that time I think he said he would make Mr. Singletary smoke."

The issues submitted to the jury and their answers thereto were as follows:

"1. Did the defendant, W. P. Singletary, cause the arrest and prosecution of the plaintiff, J. T. Harris, as alleged? Answer: Yes.

"2. Was the same done without probable cause? Answer: Yes.

"3. Was the same done with malice? Answer: Yes.

"4. Has the criminal action terminated? Answer: Yes.

"5. What damages, if any, has plaintiff sustained thereby? Answer: $2,000."

Both parties proved by numerous witnesses their general reputations to be good.

There was a judgment on the verdict, and in the judgment was the following: "And have execution thereon against both the property and person of the defendant."

Numerous exceptions and assignments of error were taken by defendant and to the judgment as rendered, and appeal to the Supreme Court.

Other necessary facts will be set forth in the opinion.

*Guion & Guion and E. M. Green for plaintiff.*
*Moore & Dunn for defendant.*

CLARKSON, J. The defendant contended that the court below erred in allowing the justice of the peace to testify that defendant swore out a warrant against the plaintiff for the larceny of a paper-writing purporting to be a letter. The justice of the peace who tried the case testified that he had given the original warrant to the clerk of the Superior Court and without objection stated that the clerk said he did not know where it was; said it must have been destroyed as they moved to build a new courthouse, and that he could not locate it. That he had an exact copy on his docket. "It was my judgment on the warrant as well as on the docket." The witness was then asked to read the warrant as shown on his docket, which he did, as follows: "Upon the oath of W. P. Singletary set forth that J. T. Harris did on or about 5 June, 1921, did take, steal, conceal and carry away valuable papers, to wit, one letter, being an essential part of a certain contract, which letter was worth to the affiant the sum of $150."

To show a writing is lost or destroyed, in general terms, without showing a reasonable search or inquiry for it, has never been regarded as sufficient to admit secondary or parol evidence of its contents. The

best evidence is the paper-writing, when a matter is required to be put in writing, or the paper-writing is in issue or the subject of the controversy. *McKesson v. Smart,* 108 N. C., p. 17; *Avery v. Stewart,* 134 N. C., p. 287; *Sermons v. Allen,* 184 N. C., p. 127; *Chair Co. v. Crawford, ante,* 531. The exception to the rule is where the contents of the writing is collateral to the controversy or issue. *Herring v. Ipock,* 187 N. C., p. 459.

In the present case the clerk was not introduced as a witness as he should have been. His evidence was hearsay, but no objection was made. The justice of the peace said that it was his judgment on the warrant as well as on the docket. Justices of the peace are required to keep dockets, latter part C. S., 1482, "in which shall be entered a minute of every proceeding had in any action before such justice." It is said in a number of cases that a justice of the peace's court is not a court of record, but under the statute a record is kept. *The defendant in his testimony admitted* that he had sworn out a warrant against plaintiff for stealing the letter. If error, it was not prejudicial. The serious contention of defendant is to the following answer of the justice of the peace, Hardy, who tried the case: "My judgment was that the suit was brought frivolous and malicious, and I taxed Mr. Singletary with the costs and dismissed the case as to Mr. Harris." The defendant asked the court to strike out the answer as to be frivolous and malicious, which was refused and exception taken.

The witness further stated, to which there was no objection: "The case was dismissed by me and affiant taxed with the cost from which affiant appealed, and that is why the papers were handed over to the clerk of the court this, 10 January, 1922. It was withdrawn 24 January, 1922, when he paid the costs and I mailed the sheriff here a check for his arrest—'check to different officers for handling papers on 25 January, 1922.'"

We think the evidence would have been incompetent under *Holton v. Lee,* 173 N. C., p. 105, if the testimony had not shown that Singletary paid the costs. This was admitted by Singletary.

C. S., 1288, is as follows: "The party convicted in a criminal action or proceeding before a justice shall always be adjudged to pay the costs; if the party charged be acquitted, the complainant shall be adjudged to pay the costs, and may be imprisoned for the nonpayment thereof, if the justice shall adjudge *that the prosecution was frivolous or malicious.* But in no action or proceeding of which he has final jurisdiction, commenced or tried in a court of a justice of the peace, shall the county be liable to pay any costs." It is well settled, in fact, the statute so says that complainant prosecutor shall be adjudged to pay the cost and im-

prisoned for nonpayment thereof if the court finds the prosecution frivolous or malicious.

An appeal lies from the judgment of a justice of the peace in a criminal action taxing the prosecutor with the cost. *S. v. Morgan,* 120 N. C., p. 563.

In *Holton v. Lee,* 173 N. C., at p. 107, it was held: "It was necessary to show malice, as it was one of the material elements of the cause of action. The burden of showing that the prosecution complained of was instituted maliciously and without probable or reasonable cause is, as we have seen, upon the plaintiff, and both of these elements must concur or the suit will fail; for if the prosecution were malicious and unfounded in matter of fact, but yet there was probable cause, the action for malicious prosecution cannot be maintained. Newell on Malicious Prosecution (1892), p. 473, sec. 12; *Stanford v. Grocery Co.,* 143 N. C., 419; *Downing v. Stone,* 152 N. C., 525; *Motsinger v. Sink,* 168 N. C., 548. Before punitive damages can be recovered express or particular malice must be shown. *Stanford v. Grocery Co.,* and the other cases above cited."

The presumption is that one knows the law. Singletary could not be imprisoned for nonpayment of cost unless the finding of the justice of the peace was "frivolous or malicious." The justice of the peace found both it was *"frivolous* and *malicious,"* from which Singletary appealed and afterwards withdrew the appeal and paid the cost. This was a circumstance and competent on the ingredient of malice in this action.

In *Downing v. Stone,* 152 N. C., at p. 527, speaking to the subject: "In Hale on Torts, 354, treating of malicious prosecution, it is said: 'Malice, as here used, is not necessarily synonymous with anger, wrath or vindictiveness. Any such ill-feeling may constitute malice. But it may be no more than the opposite of *bona fides.* Any prosecution carried on knowingly, wantonly, or obstinately, or merely for the vexation of the person prosecuted, is malicious. Every improper or sinister motive constitutes malice in this sense. The plaintiff is not required to prove express malice in the popular sense. The test is, was the defendant actuated by any indirect motive in preferring the charge or commencing the action against the plaintiff.' "

The issues submitted in the present case were similar to those in the *Downing case, supra,* as shown by the issues. In that case the justice of the peace had final jurisdiction and the court admitted the docket and judgment of the justice of the peace who tried and disposed of the case (1) to show on the issue that the action had terminated; (2) on the issue of probable cause. The Court, at p. 530, said: "It is well established with us that when a *committing magistrate,* as such, examines a

criminal case and discharges the accused, his action makes out a prima facie case of *want of probable cause,* that is the issue directly made in the investigation; but no such effect is allowed to a verdict and judgment of acquittal by a *court having jurisdiction* to try and determine the question of defendant's guilt or innocence, and the weight of authority is to the effect that such action of the trial court should not be considered as evidence on the issue as to probable cause or malice. In this case the justice had final jurisdiction to try and determine the question. The judgment is necessarily admitted, because the plaintiff is required to show that the action has terminated, but it should be restricted to that purpose, and the failure to do this constitutes reversible error," citing cases. (Italics ours.)

In the case at bar the justice of the peace had only to determine *probable cause;* he had no final jurisdiction. In the *Holton case, supra,* the Court, although the justice of the peace had no final jurisdiction, it was held the evidence incompetent to prove malice. We think on this record the withdrawal of the appeal by defendant on the *frivolous and malicious* finding was a circumstance to be submitted, with other evidence as to malice. The probative force was for the jury.

From a careful review of the charge, we think it practically follows the law as laid down in the *Downing case, supra,* and the other assignments of error are immaterial on the record.

In *Swain v. Oakey,* 190 N. C., at p. 116, it is said: "We do not think defendant could be arrested unless it is shown in using the words spoken he did so with actual malice. There is no issue of actual malice presented by the record. In actions of this kind, after verdict and judgment to arrest the defendant, it should appear affirmatively that the slander—the words spoken—were done with actual malice and an issue submitted to the jury. This does not appear to have been done from the record. *Ledford v. Emerson,* 143 N. C., p. 527; *Oakley v. Lasater,* 172 N. C., 96; *Coble v. Medley,* 186 N. C., p. 479, and cases cited. In *Elmore v. R. R.,* 189 N. C., p. 674, we said: 'There was no separate issue as to punitive damages, and on the record there is no way to ascertain if any of the damages awarded plaintiff were punitive.'"

So much of the judgment that plaintiff have execution against the defendant, as to the person, cannot be sustained.

The judgment in conformity with this opinion is

Modified and affirmed.