STATE OF NORTH CAROLINA v. HORACE RAY McCLAIN

No. 45

(Filed 13 December 1972)

1. Criminal Law § 34— evidence of defendant's guilt of other offenses —
exceptions to inadmissibility

In a prosecution for a particular crime the State generally cannot
offer evidence tending to show that the accused has committed another
distinct, independent or separate offense; however, evidence that de-
fendant committed an offense similar to the one for which he was on
trial was admissible if it tended to show that defendant was the
perpetrator of the crime for which he was being tried or if it tended
to establish a common plan or scheme.

2. Criminal Law § 34— admissibility of defendant's guilt of other offenses
— to show common plan — to identify defendant

Evidence of a crime allegedly committed by defendant a week
after the crime for which he was on trial was properly admitted where
similarities between the two crimes tended to show a *modus operandi*,
a common plan embracing the commission of both crimes, and also
established a chain of circumstantial evidence which tended to identify
defendant as the perpetrator of the crime for which he was being
tried.

3. Rape § 5— sufficiency of evidence to withstand nonsuit

State's evidence in a rape case was sufficient to withstand non-
suit where such evidence tended to show that defendant accosted his
victim late at night in a parking lot, that he held a metal teasing
comb to her throat, that he took her some distance in his car before
raping her, that defendant's car and items therein were identified by
the victim as belonging to her abductor and that defendant was appre-
hended a week later while in the process of committing a second
offense in a similar fashion.

4. Criminal Law § 127—arrest of judgment — no error in record proper

Where no error appeared on the face of the record proper, de-
fendant's motion in arrest of judgment was properly denied.

DEFENDANT appeals from judgment of *Braswell, J.,* First
March 1972 Regular Session, WAKE Superior Court.

Defendant was tried upon a bill of indictment, proper in
form, charging him with the rape of Margaret Jane Elliott on
13 October 1971 in Wake County.

Margaret Jane Elliott, the prosecuting witness, testified
that she was a student in her senior year at North Carolina
State University in Raleigh. On the night of 13 October 1971,
she studied in the library located on the campus until approxi-

State v. McClain

mately 10:15 p.m. when she left the campus to return to her home. She walked across Hillsborough Street to the Wachovia Bank parking lot where she was accosted by a black male who threatened to kill her if she screamed. He placed a metal Afro teasing comb to her neck and said, "Where is your car?" She replied, "I don't have a car." He said, "Sure, you have a car, or you wouldn't be walking through the parking lot." Miss Elliott replied, "No. My apartment is in this direction and I have to walk through the lot to get there." Her assailant thereupon dragged her to some nearby bushes where he tied her hands behind her back and put a gag of cotton in her mouth. He took her pocketbook which contained $1.13, removed the dollar and left the change. He then placed a garment, apparently a knitted sweater, over the victim's head and led her up the street several blocks, concealing her in the bushes when cars were passing. He took her to a parked car and placed her in the front seat. Then, holding a metal teasing comb against her neck, he drove to an area near the Meredith Village Apartments off Lake Boone Trail and down an unpaved, bumpy road. There, in a secluded area, the victim was forced to disrobe and lie down on the car seat where she was raped by her assailant. She was then allowed to dress, and her assailant drove from the secluded area to the highway where he put her out of the car and drove away. She did not see her assailant's face well enough to identify him.

Miss Elliott went to some nearby apartments and announced hysterically that she had been raped. Officer Perry came in response to a call and took her to Rex Hospital.

Miss Elliott was permitted to testify, over defendant's objection, that she told the officers her assailant was a black male; and that the car in which she was raped was a two-door 1963 or 1964 Chevrolet, white or pastel color, with a long, narrow dash panel with lights underneath, and a rear-view mirror suspended from the roof on a kind of metal post with two furry cats hanging from it. Officers Perry and Martin, over objection, corroborated her testimony in this respect.

About 12:30 a.m. on 19 October 1971, police officers observed a 1968 Chevrolet II Nova running without headlights on Halifax Street in Raleigh. The officers stopped the car and defendant got out on the driver's side. At that moment, a woman named Patricia Conklin jumped out of the car screaming hysterically, and the officers took defendant into custody. The officers

saw him take an Afro comb from his pocket and stick it in his hair.

Mrs. Patricia Conklin testified, over objection, that she had been to the State Fair on the night of 18 October and returned to her home at 100 N. Bloodworth Street shortly after midnight. She parked her car in front of the house, and when she started to get out, defendant pushed her over in the seat and stuck a metal object to her throat. He entered her car and told her if she screamed he would kill her. He took her car keys, held a metal Afro teasing comb to her throat and proceeded to drive the car away. Mrs. Conklin was hysterical and asked him what he wanted. Defendant said, "We'll see, just wait and see." She offered him her money and her car if he would let her go. She tried to escape when the car stopped for a traffic light, but defendant restrained her. Shortly thereafter, the police stopped the car for driving without lights and she informed the officers what had happened.

Officers searched the area surrounding the 100 block of N. Bloodworth Street and found a yellow two-door 1964 Chevrolet, license number RE-4304, parked on the 300 block of E. Edenton Street, about fifty yards from Mrs. Conklin's residence at 100 N. Bloodworth Street. A check with the Department of Motor Vehicles by radio revealed that the car was registered to Horace Ray McClain. Officer D. W. Martin drove the car to police headquarters and parked it in an enclosed area. He stayed with the car until Margaret Jane Elliott, the prosecuting witness in this case, arrived. She testified over defendant's objection: "I immediately noticed the floor mats because I kind of have an affinity for the fleur-de-lis French emblem and I automatically knew that those floor mats were the same ones that I had seen in the car previously. Also, the panel again was a long, narrow panel and the light came from under the left and maybe right side. The mirror was suspended from the ceiling and a pair of cats which had for some reason been put into the trunk at this time were in the trunk. The car was a two-door, it was a coupe, it was a '64 Chevrolet." Miss Elliott immediately identified the car as the vehicle in which she had been raped the previous week.

A metal teasing comb buried in defendant's hair was taken from him at the police station and offered in evidence as State's Exhibit D.

State v. McClain

The State also offered in evidence, over defendant's objection, the two furry cats (Exhibit A), the floor mat from defendant's car (Exhibit B), and Miss Elliott's notebook found on the Wachovia Bank parking lot (Exhibit C).

Defendant, after being fully advised of his right to offer evidence and to testify or remain silent, offered no evidence and elected to remain silent. He stipulated that a 1964 Chevrolet two-door automobile with North Carolina license number RE-4304 was registered in his name for the year 1971.

Defendant's motion for judgment of nonsuit was denied. The jury found defendant guilty of rape with recommendation for life imprisonment, and judgment was pronounced accordingly. He appealed to this Court assigning errors noted in the opinion.

*Twiggs & McCain by Grover C. McCain, Jr., attorney for defendant appellant.*

*Robert Morgan, Attorney General; Sidney S. Eagles, Jr., and Russell I. Walker, Jr., Assistant Attorneys General, for the State of North Carolina.*

HUSKINS, Justice.

Defendant preserves and presents twelve assignments of error, most of which are groundless and merit no discussion. It was competent for the victim to testify that a metal object, initially thought to be a knife but later ascertained to be a metal teasing comb, was held against her neck by her assailant. It was likewise competent for her to describe the car in which she was raped. Officers Perry and Martin were properly permitted, for corroborative purposes, to testify to Miss Elliott's prior consistent statements to them concerning the make, year, model, color and other identifying characteristics of the vehicle. Evidentiary rules establishing the competency of these matters are so well established as to require no citation of authority. All assignments of error addressed to them are overruled without discussion.

This case turns upon whether the court erred (1) in admitting the testimony of Mrs. Patricia Conklin and Officers Gray and Harley relating to defendant's subsequent commission of a similar abduction involving Mrs. Conklin and (2) in denying defendant's motion for nonsuit at the close of the State's evidence.

[1]    Defendant strongly contends that all testimony of Mrs. Patricia Conklin and Officers Gray and Harley should have been excluded by the court since its only relevancy was to show that defendant had committed another distinct, independent, separate crime. We now examine the validity of that contention.

It is a general rule of evidence that in a prosecution for a particular crime the State cannot offer evidence tending to show that the accused has committed another distinct, independent, or separate offense. Exceptions to this general rule of inadmissibility, as well recognized as the rule itself, are discussed and documented in *State v. McClain*, 240 N.C. 171, 81 S.E. 2d 364 (1954). The fourth and sixth exceptions are stated in *McClain* as follows:

"4. Where the accused is not definitely identified as the perpetrator of the crime charged and the circumstances tend to show that the crime charged and another offense were committed by the same person, evidence that the accused committed the other offense is admissible to identify him as the perpetrator of the crime charged." [Citations omitted.]

"6. Evidence of other crimes is admissible when it tends to establish a common plan or scheme embracing the commission of a series of crimes so related to each other that proof of one or more tends to prove the crime charged and to connect the accused with its commission. [Citations omitted.] Evidence of other crimes receivable under this exception is ordinarily admissible under the other exceptions which sanction the use of such evidence to show criminal intent, guilty knowledge, or identity."

*Stansbury* formulates the rule in these words: "Evidence of other offenses is inadmissible if its only relevancy is to show the character of the accused or his disposition to commit an offense of the nature of the one charged; but if it tends to prove any other relevant fact it will not be excluded merely because it also shows him to have been guilty of an independent crime." Stansbury, N. C. Evidence, § 91 (2d ed. 1963) ; *State v. Choate*, 228 N.C. 491, 46 S.E. 2d 476 (1948).

It now becomes our duty to determine whether the testimony of Mrs. Patricia Conklin and Officers Gray and Harley tends to identify defendant as the man who raped Miss Elliott,

or tends to establish a common plan or scheme. If so, evidence of defendant's attack upon Mrs. Conklin was properly admitted in the trial of this case; otherwise not.

[2] Examination of the circumstances surrounding the attack upon Miss Elliott on 13 October 1971 and the attack upon Mrs. Conklin on 19 October 1971 reveals the following similarities: (a) Both attacks were late at night on a lone woman; (b) Miss Elliott's assailant told her, "If you scream I'll kill you," and defendant told Mrs. Conklin the same thing; (c) Miss Elliott's assailant held a metal teasing comb to her throat, and defendant stuck a metal teasing comb to the throat of Mrs. Conklin; (d) defendant used Mrs. Conklin's car in her abduction, and Miss Elliott's assailant intended to use *her* car, using his own only after he became convinced she did not have a vehicle; (e) Miss Elliott's assailant parked his car some distance from the parking lot where he accosted her, and defendant's car was found parked about fifty yards from where he abducted Mrs. Conklin; (f) the make, model and color of defendant's car coincided with the description of the car in which Miss Elliott was raped; (g) defendant's car had a floor mat with the French fleur-de-lis design on it, and so did the car in which Miss Elliott was raped; and (h) two light-colored furry cats were hanging from the rear-view mirror in the car in which Miss Elliott was raped, and two light-colored furry cats were found in the trunk of defendant's car. We further note that defendant sought to conceal the color and whereabouts of his car, saying it was black and in his brother's possession at Fuquay, when in fact it was yellow and parked within fifty yards of the point where he had abducted Mrs. Conklin.

The enumerated similarities tend to show a *modus operandi*, a common plan embracing the commission of both crimes, and also establish a chain of circumstantial evidence tending to identify defendant as the man who raped Miss Elliott. Thus, evidence of the Conklin offense was admissible and should not be rejected because it incidentally proves defendant guilty of another crime. Its logical relevancy to the rape of Miss Elliott is obvious. The trial judge instructed the jury to consider such evidence "only as it relates to the identity of the defendant, Horace Ray McClain," as the man who raped Miss Elliott on 13 October 1971. It was competent on the question of identity and properly admitted. Stansbury, N. C. Evidence, § 91 (2d ed. 1963); *State v. McClain, supra* (240 N.C. 171, 81 S.E. 2d 364);

*State v. Fowler,* 230 N.C. 470, 53 S.E. 2d 853 (1949) ; *State v. Biggs,* 224 N.C. 722, 32 S.E. 2d 352 (1944). Defendant's assignments of error addressed to the alleged incompetency of this evidence are overruled.

[3]   On motion for nonsuit, the evidence must be considered in the light most favorable to the State, and the State is entitled to every reasonable intendment thereon and every reasonable inference to be drawn therefrom. *State v. Vincent,* 278 N.C. 63, 178 S.E. 2d 608 (1971) ; *State v. Primes,* 275 N.C. 61, 165 S.E. 2d 225 (1969). When the evidence here is so considered, it gives rise to the permissible inference that Miss Elliott was raped on the night of 13 October 1971 and that the defendant was the perpetrator, and affords a reasonable basis upon which the jury might so find. "Regardless of whether the evidence is direct, circumstantial, or both, if there is evidence from which a jury could find that the offense charged has been committed and that defendant committed it, the motion to nonsuit should be overruled." *State v. Goines,* 273 N.C. 509, 160 S.E. 2d 469 (1968). When considering a nonsuit motion, the court is not concerned with the weight of the testimony but only with its sufficiency to carry the case to the jury and sustain the indictment. *State v. Primes, supra; State v. McNeil,* 280 N.C. 159, 185 S.E. 2d 156 (1971). When tested by these principles, the State's evidence was sufficient to carry the case to the jury. The motion for compulsory nonsuit was properly denied.

Defendant's motions to set aside the verdict and for a new trial are merely formal and require no discussion. Such motions are addressed to the sound discretion of the trial court, and refusal to grant them is not reviewable. *State v. Downey,* 253 N.C. 348, 117 S.E. 2d 39 (1960) ; *State v. Reddick,* 222 N.C. 520, 23 S.E. 2d 909 (1943).

[4]   Finally, defendant assigns as error the denial of his motion in arrest of judgment. Judgment may be arrested when, and only when, some fatal error or defect appears on the face of the record proper. *State v. Higgins,* 266 N.C. 589, 146 S.E. 2d 681 (1966). When based on such defect, the motion may be made at any time. *State v. Kirby,* 276 N.C. 123, 171 S.E. 2d 416 (1970). "The record proper in any action includes only those essential proceedings which are made of record by the law itself, and as such are self-preserving. [Citations omitted.] The evidence in a case is no part of the record proper. [Citations omitted.] In consequence, defects which appear only by the aid of evidence

cannot be the subject of a motion in arrest of judgment." *State v. Gaston,* 236 N.C. 499, 73 S.E. 2d 311 (1952). Ordinarily, the record proper in criminal cases consists of (1) the organization of the court, (2) the charge (information, warrant or indictment), (3) the arraignment and plea, (4) the verdict, and (5) the judgment. *State v. Tinsley,* 279 N.C. 482, 183 S.E. 2d 669 (1971). Since examination of the record proper reveals no error of law, defendant's motion in arrest of judgment was properly denied.

In the trial, verdict and judgment we find

No error.