STATE OF NORTH CAROLINA v. FRANK THOMAS SPRINGER, JR.

No. 72

(Filed 12 July 1973)

1. **Indictment and Warrant § 9; Larceny § 4— theft of credit card — sufficiency of card description in indictment**

    In a prosecution for theft of a credit card, the trial court properly denied defendant's motion to quash the bill of indictment where the credit card allegedly withheld was sufficiently described to inform the accused with certainty as to the crime he allegedly committed even though the card was not specifically identified by its number.

2. **Criminal Law § 80— computer printout of business records — requisites for admissibility**

    Printout cards or sheets of business records stored on electronic computing equipment are admissible in evidence, if otherwise relevant and material, if: (1) the computerized entries were made in the regular course of business, (2) at or near the time of the transaction involved, and (3) a proper foundation for such evidence is laid by testimony of a witness who is familiar with the computerized records and the methods under which they were made so as to satisfy the court that the methods, the sources of information, and the time of preparation render such evidence trustworthy.

3. **Criminal Law §§ 80, 81— evidence of contents of computer printout — failure to lay foundation — violation of best evidence rule**

    In a prosecution for theft of a credit card, the trial court erred in admitting into evidence testimony of a witness as to the contents of a computer printout pertaining to the credit card in question without first laying a foundation for such testimony; furthermore, admission of the witness's testimony, rather than the printout itself, violated the best evidence rule.

4. **Larceny § 6— theft of credit card — evidence of possession of other credit cards competent**

    In a prosecution for theft of a BankAmericard credit card, evidence that defendant had three other credit cards in his possession which had been issued in the names of persons other than defendant

State v. Springer

or members of his immediate family was competent (1) to make out a *prima facie* case as provided in G.S. 14-113.10 that defendant had obtained all credit cards in his possession in violation of G.S. 14-113.9(a); (2) to establish a common plan or scheme; and (3) to show criminal intent and guilty knowledge.

5. **Indictment and Warrant § 17— issue date of credit card — variance between allegation and proof not fatal**

Issue date of a credit card was not a material fact which the State must allege and prove in a prosecution for theft of the card; therefore, allegation in the bill of indictment that the card was issued on 20 September 1971, but proof that the card was issued on 15 September 1971 did not constitute a fatal variance requiring nonsuit.

6. **Larceny § 8— theft of credit card — instruction on possession of other credit cards**

The trial court in a prosecution for theft of a credit card properly instructed the jury regarding the legal significance of the State's evidence tending to show that defendant had in his possession and under his control credit cards issued in the names of two or more persons other than defendant and members of his immediate family.

Justice HIGGINS dissenting.

APPEAL by defendant from judgment of *Collier, J.,* 13 November 1972 Session, CATAWBA Superior Court, docketed in the Court of Appeals and transferred to the Supreme Court for initial appellate review by order entered pursuant to G.S. 7A-31(b)(4).

The bill of indictment charges that on 28 March 1972 the defendant "did unlawfully, wilfully, and feloniously withhold a BankAmericard Credit Card from the control and possession of Mabel L. Long, the person named on the face of such Credit Card and to whom the Credit Card had been issued. This withholding was done without the consent of the above named Cardholder, to whom such Credit Card had been issued by North Carolina National Bank on September 20, 1971 and which Card was in effect at the time of such withholding, against the form of the statute in such case made and provided and against the peace and dignity of the State."

The State offered in evidence the following exhibits and elicited the following testimony relating thereto:

*State's Exhibit No. 1*—A BankAmericard with the name Mabel L. Long embossed on it and bearing the number 434 215 027 2369. This card bears the signature of Mrs. Long and she testified she placed it thereon. She testified that she had never

given defendant or anyone else permission to use or withhold this card; that she discovered it was missing on 4 February 1972 and reported its loss to North Carolina National Bank the same day. At the time it was lost the balance she owed North Carolina National Bank for use of the card was approximately $7.92. She identified the card by number and by her signature thereon.

*State's Exhibit No. 2*—A Citgo credit card with the name of Neil E. Bohn embossed on it and bearing the number 190 392 456. Mr. Bohn testified that he used this credit card for four or five months and discovered it missing about the middle of March 1972. He stated that he did not give defendant or any other person permission to have or to use it.

*State's Exhibit No. 3*—A BP credit card bearing the name Edward Carriker and a number which is not shown in the record. Edward Carriker testified that he and defendant had previously been in business together in the early part of 1971 selling burglar alarms; that he allowed defendant to use his credit cards during that period of time, one of which was a BP credit card, and defendant made arrangements to pay the bill through the oil company; that he does not remember this particular BP card—"I never received this card." Mr. Carriker further testified that defendant "gave me my cards back and I mailed mine back to BP. There is no issue date on that card. I do know that for a period of time he made payments on the BP credit card. . . . To my knowledge I was never issued this card." This witness further stated that during the month of March 1972 he did not give defendant permission to use any BP credit card that previously may have been issued to him.

*State's Exhibit No. 4*—A Humble Oil and Refining Company credit card bearing the name Richard B. Young and the number 361 113 4580. Mr. Young testified that he held and used this credit card until September or October 1971 at which time he put it away in a large briefcase; that he never knew the card was missing until Humble Oil and Refining advised him that "they had found the credit card"; that he never gave defendant or anyone else permission to use or hold it.

The State's evidence further tends to show that on 29 March 1972 defendant and another man purchased some gas and three cans of Sta-power Oil Cushion from an Esso Service Station in Hickory, totaling $12.50 plus tax, and paid for the

purchase with S-4, the Humble Oil and Refining Company credit card issued to Richard Young. Mildred Brittain, one of the station operators, identified S-4 as the card used and testified: "A credit card was handed to the short man which was later known as Lou Kirk or some Kirk. A credit card was handed to him. . . and the signature on the credit card was made by Mr. Kirk. I looked at the signature because the name was in Richard Young and the signature was written R. Young. Mr. Kirk said something about taking some more oil with them because they had just purchased a car that day and it was drinking the oil, and I said, well, I will need to call in. Mr. Springer said, no, we won't need any more oil. . . . I became suspicious and called Humble and they advised me that there was a reward out on the card and not to issue any type of purchase on it and to immediately turn it over so I went ahead and called the police station." Mrs. Brittain further testified that at the time she saw defendant hand this credit card to Kirk "I saw cards. I did not look close enough to see which was any type of cards. I did see more than one. . . . Mr. Springer handed Mr. Kirk one of these cards." Mrs. Brittain identified a can of Sta-power Oil Cushion (S-5) as one of the cans sold to defendant and Kirk on the date in question.

Lt. Hugh Hunt of the Hickory Police Department testified that on 29 March 1972 he was on the lookout for a 1959 Chevrolet, white over blue, Tennessee license number D 1564; that he spotted the car on U. S. 321 Bypass in Hickory and stopped it; that defendant was the operator and, upon request, presented a valid driver's license but was unable to present a registration card; that a man named Louie Kirk was a passenger in the car; that both men were placed in the back seat of the patrol car and taken to the police station; that on the way he glanced at his rear view mirror and saw Louie Kirk passing cards to defendant and saw defendant "put them down between his legs and the next time they were under the seat where Thomas Springer was sitting. Springer didn't take the cards and hold onto them, he put them under the seat of the patrol car. All I could see were that they were credit cards. I couldn't read the number or the names on them." When defendant and Louie Kirk were removed from the patrol car at the police station, the officer looked under the seat and found State's Exhibits 1, 2 and 4. State's Exhibit 3 was taken from defendant's billfold at the police department.

State v. Springer

Lt. Hunt searched defendant's car with his permission and found ninety-three quarts of motor oil of various brands, a can of oil softener and a little hand drill.

Fred Holt, a special investigator with BankAmericard, North Carolina National Bank, in Greensboro, testified that when a credit card has been reported lost or stolen he checks to see when it was issued, where it was issued and how many were issued; that this checking is done through North Carolina National Bank's IBM computer and the computer printout shows the official record pertaining to each and every credit card. Over objection, he was permitted to testify that the official computer printout with regard to credit card No. 434 215 027 2369, issued to Mabel L. Long, showed that said card was issued on 15 September 1971; that as of 4 February 1972, the date the card was reported missing, the balance Mrs. Long owed by reason of using said card was $7.12; that the computer printout showed that since 4 February 1972 the Mabel L. Long card had been used seventy-three times in twenty-two North Carolina cities for purchases totaling $1,209.63; that the printout showed the last date the card was used to be 30 March 1972 in connection with a purchase from Shamrock Hardware in Charlotte—at which time defendant was in jail in Hickory, having been arrested and jailed on 29 March 1972 in connection with this case.

Defendant offered no evidence. Defendant's motion for nonsuit was denied. The jury returned a verdict of guilty as charged and defendant was sentenced to a prison term of not less than two nor more than three years. His assignments of error on appeal will be noted in the opinion.

*John H. McMurray, Attorney for defendant appellant.*

*Robert Morgan, Attorney General; C. Diederich Heidgerd; Associate Attorney, for the State of North Carolina.*

HUSKINS, Justice.

Defendant is charged with unlawfully, willfully and feloniously withholding a credit card from Mabel L. Long, the card-

holder, in violation of G.S. 14-113.9(a)(1). That subsection reads as follows:

"§ 14-113.9. *Credit card theft.*— (a) A person is guilty of credit card theft when:

(1) He takes, obtains or withholds a credit card from the person, possession, custody or control of another without the cardholder's consent or who, with knowledge that it has been so taken, obtained or withheld, receives the credit card with intent to use it or to sell it, or to transfer it to a person other than the issuer or the cardholder."

Acts dealing with credit card crimes have been enacted in nearly all states in recent years. In defining credit card theft, the majority of these acts have been drafted with much greater clarity than ours. Georgia and Virginia have followed our statute almost verbatim. See Georgia Code Ann. § 26-1705.2 (1972); Virginia Code Ann. § 18.1-125.3 (Supp. 1972). The better drafted version enacted in many other states is illustrated by Arizona Stat. Ann. § 13-1073A (Supp. 1972).

Our statute almost defies analysis. Apparently, an accused may violate G.S. 14-113.9(a)(1) in four distinct ways. *Compare State v. Albarty,* 238 N.C. 130, 76 S.E. 2d 381 (1953). He may (1) *take,* (2) *obtain,* or (3) *withhold* a credit card from the person, possession, custody or control of another without the cardholder's consent; or (4) he may receive a credit card with intent to use it or sell it or transfer it to some person other than the issuer or cardholder, knowing at the time that the card had been so taken, obtained or withheld. A person violating G.S. 14-113.9(a)(1) in any of the four enumerated ways is guilty of credit card theft. Of course, a person who commits the acts proscribed by G.S. 14-113.9(a)(2), (3) and (4) is also guilty of credit card theft.

[1] Before pleading, defendant moved to quash the bill of indictment on the ground that it is fatally defective in failing to describe the BankAmericard by number. Denial of his motion is assigned as error.

The bill alleges that the card was issued to Mabel L. Long on 20 September 1971, while the State's evidence tends to show that it was issued to her on 15 September 1971. Defendant argues that this discrepancy together with absence of a credit card

number renders the bill of indictment fatally defective and subject to quashal.

While a motion to quash is an appropriate method of testing the sufficiency of the bill of indictment to charge a criminal offense, it lies only for a defect appearing on the face of the warrant or indictment. *State v. McBane,* 276 N.C. 60, 170 S.E. 2d 913 (1969) ; *State v. Turner,* 170 N.C. 701, 86 S.E. 1019 (1915). "The court, in ruling on the motion, is not permitted to consider extraneous evidence. Therefore, when the defect must be established by evidence *aliunde* the record, the motion must be denied." *State v. Cochran,* 230 N.C. 523, 53 S.E. 2d 663 (1949) ; *State v. Bass,* 280 N.C. 435, 186 S.E. 2d 384 (1972). The sole exception to this rule is noted in *State v. Underwood,* 283 N.C. 154, 195 S.E. 2d 489 (1973).

When these principles are applied to the bill of indictment under attack, it is quite apparent that defendant's motion to quash was properly denied. No defect appears on the face of the indictment. The credit card allegedly withheld is sufficiently described to inform the accused with certainty as to the crime he allegedly committed. Had there been any additional information necessary to the preparation of his defense, he could have requested a bill of particulars prior to the trial. Defendant's first assignment is overruled.

Fred Holt, a special investigator with BankAmericard, North Carolina National Bank, in Greensboro, testified that the bank's IBM computer printout is the official record pertaining to credit cards. Over objection, he was permitted to testify that the official computer printout regarding credit card 434 215 027 2369, issued to Mabel L. Long, showed: (1) That said card was issued on 15 September 1971; (2) that as of 4 February 1972 when the card was reported missing Mrs. Long's balance owed was $7.12; (3) that since 4 February 1972 the card had been used seventy-three times in twenty-two North Carolina cities for purchases totaling $1,209.63, which amount is currently due according to the printout; and (4) that said card was last used on 30 March 1972 in connection with a purchase from Shamrock Hardware in Charlotte. Admission of this testimony constitutes defendant's second assignment of error.

Modern business conditions and methods have long since required revision of the rule of evidence formerly observed by the courts limiting proof of business transactions to matters

within the personal knowledge of the witness. *See Insurance Co. v. R. R.,* 138 N.C. 42, 50 S.E. 452 (1905); *Flowers v. Spears,* 190 N.C. 747, 130 S.E. 710 (1925). "The impossibility of producing in court all the persons who observed, reported and recorded each individual transaction gave rise to the modification which permits the introduction of recorded entries, made in the regular course of business, at or near the time of the transaction involved, and authenticated by a witness who is familiar with them and the method under which they are made. This rule applies to original entries made in books of account in regular course by those engaged in business, when properly identified, though the witness may not have made the entries and may have had no personal knowledge of the transactions." *Supply Co. v. Ice Cream Co.,* 232 N.C. 684, 61 S.E. 2d 895 (1950).

Few courts have dealt with the use in evidence of business records stored on computers. In *King v. State ex rel. Murdock Acceptance Corp.,* 222 So. 2d 393 (Miss. 1969), it was held that printout sheets of business records stored on electronic computing equipment "are admissible in evidence, if relevant and material, without the necessity of identifying, locating and producing as witnesses the individuals who made the entries in the regular course of business if it is shown (1) that the electronic computing equipment is recognized as standard equipment, (2) the entries are made in the regular course of business at or reasonably near the time of the happening of the event recorded, and (3) the foundation testimony satisfes [sic] the court that the sources of information, method and time of preparation were such as to indicate its trustworthiness and justify its admission." *See also Transport Indemnity Co. v. Seib,* 178 Neb. 253, 132 N.W. 2d 871 (1965); *Railroad Commission v. Southern Pacific Co.,* 468 S.W. 2d 125 (Tex. Civ. App. 1971); *Arnold D. Kamen & Co. v. Young,* 466 S.W. 2d 381 (Tex. Civ. App. 1971); McCormick, *Evidence* § 314 (2d ed. 1972); Comment, *Admissibility of Computer Business Records as an Exception to the Hearsay Rule,* 48 N. C. L. Rev. 687 (1970); Note, *Admissibility of Computer Kept Business Records,* 55 Cornell L. Rev. 1033 (1970); Annot., 11 A.L.R. 3d 1368 (1967).

The General Assembly of North Carolina has enacted the following statutes, almost identical, dealing with the subject:

"§ 55-37.1. *Form of records.*—Any records maintained by a corporation in the regular course of its business, including its stock ledger, books of account, and minute

State v. Springer

books, may be kept on, or be in the form of, punch cards, magnetic tape, photographs, microphotographs, or any other information storage device; provided that the records so kept can be converted into clearly legible form within a reasonable time. Any corporation shall so convert any records so kept upon the request of any person entitled to inspect the same. Where records are kept in such manner, the cards, tapes, photographs, microphotographs or other information storage device together with a duly authenticated print-out or translation shall be admissible in evidence, and shall be accepted for all other purposes, to the same extent as an original written record of the same information would have been." Session Laws 1969, c. 751, s. 14.

"§ 55A-27.1. *Form of records.*—Any records maintained by a corporation in the regular course of its business, including its books of account and minute books, may be kept on, or be in the form of, punch cards, magnetic tape, photographs, microphotographs, or any other information storage device; provided that the records so kept can be converted into clearly legible form within a reasonable time. Any corporation shall so convert any records so kept upon the request of any person entitled to inspect the same. Where records are kept in such manner, the cards, tapes, photographs, microphotographs or other information storage device together with a duly authenticated readout or translation shall be admissible in evidence, and shall be accepted for all other purposes, to the same extent as an original written record of the same information would have been." Session Laws 1969, c. 875, s. 6.

These statutes were designed to give broad legislative approval to the use in evidence of corporate computer records. However, in declaring such computer records admissible in evidence "to the same extent as an original written record of the same information would have been," these statutes do not deal with the special problems of reliability created by the use of computers. *See* Note, supra, 55 Cornell L. Rev. 1033 (1970). We therefore construe them as authorizing the admission of corporate computer records under appropriate safeguards deemed sufficient to render them trustworthy. These statutes do not, and were not designed to, preclude judicial development of workable standards for the admission of computerized business records generally.

[2]  The rules of evidence governing the admissibility of computerized business records should be consistent with the reality of current business methods and should be adjusted to accommodate the techniques of a modern business world, with adequate safeguards to insure reliability. We therefore hold that printout cards or sheets of business records stored on electronic computing equipment are admissible in evidence, if otherwise relevant and material, if: (1) the computerized entries were made in the regular course of business, (2) at or near the time of the transaction involved, and (3) a proper foundation for such evidence is laid by testimony of a witness who is familiar with the computerized records and the methods under which they were made so as to satisfy the court that the methods, the sources of information, and the time of preparation render such evidence trustworthy. Computer printout evidence may be refuted to the same extent as business records made in books of account.

[3]  Application of the enunciated rule to the case before us impels the conclusion that the computer printout referred to in the testimony of Fred Holt, the special investigator, was inadmissible since no foundation was laid for its admission. In fact, the printout itself was not offered in evidence. Instead, the witness Fred Holt was permitted to testify as to the contents of the printout, and this evidence was likewise inadmissible under the best evidence rule. Stansbury, N. C. Evidence § 190 (Brandis Rev. 1973). *See Supply Co. v. Ice Cream Co., supra* (232 N.C. 684, 61 S.E. 2d 895); *Harris v. Singletary,* 193 N.C. 583, 137 S.E. 724 (1927). Admission of this testimony constitutes prejudicial error requiring a new trial.

Other assignments likely to arise on retrial will be briefly discussed.

Defendant assigns as error the admission of evidence, over objection, that, in addition to the Mabel L. Long card, defendant had three other credit cards in his possession which had been issued in the names of persons other than defendant or members of his immediate family. He contends that in this prosecution for theft of the Mabel L. Long card the State cannot offer evidence tending to show that he has committed other crimes. This constitutes his third assignment of error.

[4]  This assignment is overruled for lack of merit. The evidence was competent (1) to make out a *prima facie* case as pro-

vided in G.S. 14-113.10 that defendant had obtained all credit cards in his possession in violation of G.S. 14-113.9(a); (2) to establish a common plan or scheme to commit credit card crimes so related to each other that proof of one or more tends to prove the crime charged and to connect defendant with its commission; and (3) to show criminal intent and guilty knowledge. *State v. McClain,* 240 N.C. 171, 81 S.E. 2d 364 (1954). *Accord, State v. McClain,* 282 N.C. 357, 193 S.E. 2d 108 (1972); *State v. Fowler,* 230 N.C. 470, 53 S.E. 2d 853 (1949); *State v. Choate,* 228 N.C. 491, 46 S.E. 2d 476 (1948); *State v. Biggs,* 224 N.C. 722, 32 S.E. 2d 352 (1944); Stansbury, N. C. Evidence §§ 91, 92 (Brandis Rev. 1973).

[5]   The bill of indictment alleges the Mabel L. Long credit card was issued on 20 September 1971 while the State's evidence tends to show that it was issued on 15 September 1971. Defendant contends this constitutes a fatal variance requiring nonsuit. His fourth assignment of error is based on denial of his motion for judgment of nonsuit at the close of the State's evidence.

While a fatal variance between the indictment and the proof is properly raised by motion for judgment of nonsuit, *State v. Keziah,* 258 N.C. 52, 127 S.E. 2d 784 (1962); *State v. Nunley,* 224 N.C. 96, 29 S.E. 2d 17 (1944), the date upon which the Mabel L. Long card was issued is not necessary to describe the card, is not an essential element of the offense charged, and therefore is not a material fact which the State must allege and prove. Both the allegation and the proof may be disregarded as surplusage. We note that nothing in the record shows that any of the credit cards in defendant's possession, or any other credit cards, bear on their face the date of issuance.

If there is any evidence which tends to prove guilt as a fairly logical and legitimate deduction, as opposed to merely raising a suspicion or conjecture of guilt, nonsuit is properly denied. *State v. Mabry,* 269 N.C. 293, 152 S.E. 2d 112 (1967); *State v. Bogan,* 266 N.C. 99, 145 S.E. 2d 374 (1965). Considering the evidence in the light most favorable to the State, as we are required to do, it is sufficient to repel the motion for nonsuit and carry the case to the jury. Defendant's fourth assignment is overruled.

[6]   In light of the evidence in this case and the provisions of G.S. 14-113.10, it was the duty of the court to instruct the jury regarding the legal significance of the State's evidence tending

to show that defendant had in his possession or under his control credit cards issued in the name of two or more persons other than defendant and members of his immediate family. G.S. 14-113.10 expressly provides that the possession of such cards is *prima facie* evidence that the cards were obtained in violation of G.S. 14-113.9(a). Defendant's fifth assignment of error, based on the contention that this portion of the charge should not have been given, is overruled.

For prejudicial error committed in the admission of incompetent evidence concerning computerized business records, there must be a new trial and it is so ordered.

New trial.

Justice HIGGINS dissenting.

The sufficiency of the indictment in this case is directly challenged by the motion to quash. The prosecution is based on the following indictment:

"THE JURORS FOR THE STATE UPON THEIR OATH PRESENT, That Frank Thomas Springer, Jr. late of the County of Catawba on the 28th day of March, 1972 with force and arms, at and in the county aforesaid, did unlawfully, wilfully, and feloniously withhold a BankAmericard Credit Card from the control and possession of Mabel L. Long, the person named on the face of such Credit Card and to whom the Credit Card had been issued. This withholding was done without the consent of the above named Cardholder, to whom such Credit Card has been issued by North Carolina National Bank on September 20, 1971 and which Card was in effect at the time of such withholding, against the form of the statute in such case made and provided and against the peace and dignity of the State."

The indictment was drawn to charge an offense under G.S. 14-113.9 which provides:

"*Credit card theft.*—(a) A person is guilty of credit card theft when:

"(1)  He takes, obtains or withholds a credit card from the person, possession, custody or control of another without the cardholder's consent or who, with knowledge that it has been so taken, ob-

tained or withheld, receives the credit card with intent to use it or to sell it, or to transfer it to a person other than the issuer or the cardholder; or

"(2)  He receives a credit card that he knows to have been lost, mislaid, or delivered under a mistake as to the identity or address of the cardholder, and who retains possession with intent to use it or to sell it or to transfer it to a person other than the issuer or the cardholder; or

"(3)  He, not being the issuer, sells a credit card or buys a credit card from a person other than the issuer; or

"(4)  He, not being the issuer, during any 12-month period, receives credit cards issued in the names of two or more persons which he has reason to know were taken or retained under circumstances which constitute a violation of G.S. 14-113.13(a) (3) and subdivision (3) of subsection (a) of this section.

"(b)  Taking, obtaining or withholding a credit card without consent is included in conduct defined in G.S. 14-75 as larceny.

"Conviction of credit card theft is punishable as provided in G.S. 14-113.17(b). (1967, c. 1244, s. 2)."

In my opinion, a valid indictment must charge the theft of the credit card. The indictment in this case actually charges that which the statute says will be sufficient evidence to make out a case of theft against the person in possession of the stolen card.

In my opinion, the indictment fails to charge the crime of theft and the motion to quash should have been allowed.