271 S.E.2d 535 (1980)
49 N.C. App. 403
STATE of North Carolina
v.
Carolyn Elaine ROGERS.
No. 8010SC368.
Court of Appeals of North Carolina.
November 4, 1980.
*537 Atty. Gen. Rufus L. Edmisten by Asst. Atty. Gen. Robert R. Reilly, Raleigh, for the State.
Rafford E. Jones, Raleigh, for defendant-appellant.
WHICHARD, Judge.
Defendant's first assignment of error presents for decision a significant issue of first impression in the interpretation of North Carolina's Speedy Trial Act. G.S. 15A-701 et seq. The record reveals several undisputed facts pertinent to resolution of this issue. A warrant for defendant's arrest for the crime in question was issued 6 April 1979. The Grand Jury returned a true bill of indictment against defendant on 29 May 1979. Defendant's trial commenced 7 November 1979, and judgment was entered 8 November 1979.
G.S. 15A-701(a1) provides:
Notwithstanding the provisions of G.S. 15A-701(a) the trial of a defendant charged with a criminal offense who is arrested, served with criminal process, waives an indictment or is indicted, on or after October 1, 1978, and before October 1, 1980, shall begin within the time limits specified below:
(1) Within 120 days from the date the defendant is arrested, served with criminal process, waives an indictment, or is indicted, whichever occurs last.
Defendant's indictment fell within the time period to which section 15A-701(a1) (1) applies. A period in excess of 120 days *538 elapsed between indictment and trial. Nothing else appearing, therefore, defendant's motion to dismiss pursuant to the provisions of G.S. 15A-703 should have been granted. To deny the motion the court must have excluded some portion or portions of the time between indictment and trial pursuant to G.S. 15A-701(b).
The record does not reveal, nor does the State contend, that any of the specified exclusionary provisions of G.S. 15A-701(b) are applicable. The State does contend, however, and the trial court ruled, that the time between defendant's indictment on 29 May 1979 and a stipulation of readiness for trial by defendant's attorney dated 16 July 1979 should be excluded as a "period of delay resulting from other proceedings concerning the defendant" pursuant to G.S. 15A-701(b)(1) because the State was waiting during that time for defendant to secure counsel for her defense.
Our research discloses no cases resolving the issue presented by this ruling in this or other jurisdictions among the fifty states. G.S. 15A-701(b) was taken almost verbatim from the federal Speedy Trial Act, 18 U.S.C. § 3161(h) (Supp.1980); yet, we find no federal cases interpreting the phrase "delay resulting from other proceedings concerning the defendant" as it relates to the issue of time which elapses while defendant is securing counsel. Thus, it becomes our task to attempt to ascertain legislative intent and to interpret and apply the provision accordingly.
While legislative history in North Carolina is generally quite limited, in this instance we have the benefit of a report to the 1977 General Assembly which recommended the enactment of the legislation now codified as G.S. 15A-701 et seq. That Report states the following with reference to the provision here in question:
Subdivision (1) excludes delays resulting from other proceedings concerning the defendant. Several types of proceedings are listed. The opening clause clearly states, however, that the specified exclusions are not exhaustive of the types of other proceedings.

(Emphasis supplied.) Legislative Research Commission Report to the 1977 General Assembly, Speedy Trials, Appendix J, at J-3 (1977). It is evident that the drafters of this legislation contemplated that the courts would augment the specified types of proceedings which should result in exclusions in computing the time within which the trial of a criminal case must commence. It would also appear that a liberal construction of the phrase in question was intended.
So construing the phrase, we agree with the trial court that under the facts of this case the time period in question should be held to be among the excluded periods within the intended meaning of "delay resulting from other proceedings concerning the defendant" as contemplated by the General Assembly in enacting G.S. 15A-701(b). The defendant here testified at a hearing on the motion to dismiss for failure to comply with the Speedy Trial Act that at her first appearance in district court inquiry was made as to whether the court should appoint an attorney for her. At that time she executed a waiver of her right to counsel and indicated to the court that she would obtain her own counsel. She further testified: "I stated to the Court that my parents could obtain counsel with our own funds at that time." The trial judge asked the defendant at the hearing: "Now, did you at any time intend to proceed without the benefit of a lawyer?" Defendant answered: "No."
We note that the record reveals no findings of fact and no conclusions of law entered by the trial court on the basis of this and other evidence adduced at the hearing on the motion; and we suggest that trial courts hereafter in determining exclusionary periods under the Speedy Trial Act detail for the record findings of fact and conclusions of law in support of their rulings. It is apparent here, nevertheless, that the trial court determined that the State met the burden of proof imposed on it by G.S. 15A-703 of "going forward with evidence in connection with excluding periods from computation of time in determining whether or not the time limitations ... have been complied with."
*539 The defendant here was entitled not only to a speedy trial, but also to representation by counsel in the presentation of her defense. She represented to the court at the outset of the proceedings her intention to secure privately retained counsel. She subsequently represented to the court that she did not at any time intend to proceed without the benefit of a lawyer. The State had no notice that defendant was represented by counsel, retained or appointed, until stipulation of readiness for trial dated 16 July 1979 was submitted by counsel appointed to represent defendant in other cases. Under these facts, it was not unreasonable nor was it beyond the purview of the exclusionary provisions for "delay resulting from other proceedings concerning the defendant" for the trial court to exclude from its Speedy Trial Act computation the period between defendant's indictment on 29 May 1979 and the stipulation of readiness for trial dated 16 July 1979. A trial of defendant without benefit of counsel would be subject to nullification by virtue of deprivation of defendant's well-established constitutional right to counsel. For the courts to interpret the computation of delays under the Speedy Trial Act so as to create the possibility of constitutional error would be an absurdity, and "[i]t is fully established that `the language of a statute will be interpreted so as to avoid an absurd consequence.'" Taylor v. Crisp, 286 N.C. 488, 496, 212 S.E.2d 381, 386 (1975).
We hold, therefore, that under the particular facts of this case, the trial court ruled correctly in determining that the State had met its burden of "going forward with evidence in connection with excluding periods from computation in determining whether or not the time limitations under [the Speedy Trial Act] have been complied with"; and thus in excluding from its computation pursuant to G.S. 15A-701 the period of delay between defendant's indictment on 29 May 1979 and the stipulation of readiness for trial dated 16 July 1979, during which time the State had reason to believe defendant was in the process of securing counsel for her defense. With this exclusion, defendant was tried within the period prescribed by G.S. 15A-701. This assignment of error is, therefore, overruled. We would caveat, however, that our holding is limited to the peculiar facts of this case and should not be construed as establishing a general exemption from the provisions of the Speedy Trial Act, regardless of the circumstances, of periods of time attributable to the securing of defense counsel.
Defendant assigns error to the trial court's having allowed several witnesses to testify that the credit card in question was "stolen". With the exception of the final two instances, the trial court properly either sustained objections to this testimony or admitted it for the purpose of or subject to subsequent corroboration. The final two instances related to the introduction of State's Exhibit # 2, a computerized "lost report" containing information concerning the credit card in question.
In State v. Springer, 283 N.C. 627, 197 S.E.2d 530 (1973), Justice Huskins, speaking for our Supreme Court, set forth as follows the manner in which the admissibility into evidence of computerized business records must be determined:
[P]rintout cards or sheets of business records stored on electronic computing equipment are admissible in evidence, if otherwise relevant and material, if: (1) the computerized entries were made in the regular course of business, (2) at or near the time of the transaction involved, and (3) a proper foundation for such evidence is laid by testimony of a witness who is familiar with the computerized records and the methods under which they were made so as to satisfy the court that the methods, the sources of information, and the time of preparation render such evidence trustworthy.
Springer, 283 N.C. at 636, 197 S.E.2d at 536.
The State's witness, Joseph W. King, a "Special Investigator" for Citibank Credit Services in New York, testified that the records here composing the "lost report" were maintained in the regular course of business at Citibank. He further testified as to the chain of events by which the *540 information was obtained and keyed into the computer. He testified that the credit card in question was reported stolen on 26 February 1979, and that at that time Citibank, in the regular course of its business, entered the information concerning Mr. Hart's credit card into its computer. He laid a proper foundation by testifying as to his own familiarity with the record keeping practice of Citibank concerning the information in question, and by describing the process of obtaining and recording this information. We find this evidence sufficient to meet the requirements of Springer as set forth above, and to corroborate the testimony of previous witnesses who referred to the card as having been "stolen". This assignment of error is therefore overruled.
Defendant assigns error to the admission into evidence of a statement which she made to a police officer that "she had taken the credit cards from Mr. Hart and that she was going to return them to him in a little while." Evidence adduced by the State at a voir dire hearing conducted prior to admission of the statement tended to show that defendant was taken to the Cary police station in the custody of a police officer. She was taken there for the purpose of trying to "correct the problem" by contacting Mr. Hart so the police could "bring him down to try to straighten the matter out." When the officer informed the defendant that he had been advised that there was no Mr. Hart working for Burroughs-Wellcome, contrary to defendant's representations, he thereupon placed her in an interview room and advised her of her rights. Defendant signed a waiver of rights form after the officer went over its contents with her, and she indicated she would talk to the officers without an attorney present. After the officer advised her of her rights and advised her that she was under arrest, defendant made the statement that she had taken the card from Mr. Hart but intended to give it back to him.
The evidence adduced at the voir dire hearing supports the factual findings made by the trial court to the effect that the defendant voluntarily visited the police station for the purpose of assisting the police in contacting Mr. Hart, her alleged husband; that when the police learned while she was there that the credit card had been stolen, they thereupon informed the defendant that the investigation had become accusatory; that the defendant was advised of her constitutional rights when the investigation became accusatory in nature; and that the defendant signed the waiver of rights form after being advised as to her rights and after inquiry as to whether she understood her rights. These and other factual findings fully support the conclusions of the trial court that the defendant understood her rights; that she purposely freely, knowingly and affirmatively waived each of them; that any statement she made prior to execution of the waiver of rights form was voluntarily made to the police as she sought their assistance in clearing up the matter of her authority to use the credit card; and that any statement made after execution of the waiver of rights form was made knowingly and voluntarily. Nothing in the record of this case indicates an intent on the part of the officers involved to circumvent the requirements of Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), or to place the defendant under an involuntary compulsion to communicate inculpatory information. This assignment of error is overruled.
Defendant assigns error to the trial court's denial of her motion to dismiss at the close of the State's evidence. The evidence, considered in the light most favorable to the State, was sufficient to establish each essential element of the offense charged and the defendant as the perpetrator thereof. This assignment of error is overruled.
Defendant's final assignment of error relates to the trial court's summary of the evidence and application of the law thereto. We have examined the portion of the charge complained of, and we find no prejudicial error.
We find that the defendant had a trial free from prejudicial error.
No error.
MORRIS, C. J., and HEDRICK, J., concur.