State v. Copeland

STATE OF NORTH CAROLINA v. PRESTON McDONALD
COPELAND

No. 10

(Filed 10 October 1973)

**1. Criminal Law § 161— appeal as exception to judgment**
    The appeal itself is considered an exception to the judgment and
    presents for review any error appearing on the face of the record
    proper.

**2. Criminal Law § 157— necessary parts of record proper**
    Ordinarily, the record proper in criminal cases consists of the
    organization of the court, the charge (information, warrant, or in-
    dictment), the arraignment and plea, the verdict, and the judgment.

DEFENDANT appeals from judgment of *Fountain, J.*, 22
January 1973 Session, PERQUIMANS Superior Court.

Defendant was tried on a bill of indictment, proper in
form, charging him with the first degree murder of Stanley
Wayne Blanchard on 5 August 1972. Attorneys Clarence W.
Griffin and O. C. Abbott were appointed to represent him.

William Lee Chappell testified that he was acquainted with
defendant and his wife Mary Ann Copeland. About ten days
prior to 5 August 1972, defendant said he was having trouble
with his wife, "that she would stay with him awhile and then
take off again."

Chappell further testified that he had been a dealer in fire-
arms for seven or eight years. On 4 August 1972, at defendant's
request, Chappell purchased a 16-gauge Stevens double-barreled
shotgun from Charles Young together with fifteen or sixteen
shells for use in the shotgun. The following day he went to de-
fendant's home around 7:30 p.m. to deliver the gun. Defendant
examined it and asked Chappell "if he would come up there at
9:00 that night to pick him up, . . . that he wanted to put a
scare in Stanley Wayne Blanchard, the deceased; that he thought
if he put a scare in Blanchard it would keep Blanchard away
from his wife, Mary Ann Copeland; that Stanley Wayne Blanch-
ard would be in his brother-in-law's, Jack Dail's, trailer, and
that arrangements were made for him, Chappell, to pick up
Copeland . . . about 300 yards from the home of Preston Cope-
land." Chappell retained possession of the gun and rode around
until approximately 9 p.m. He then drove to the appointed spot

where defendant, dressed in brown or grey pants, black sweater and a yellowish looking shirt, jumped in the car. Chappell then drove about four miles to a point beyond Jack Dail's trailer, turned around as directed by defendant, and let the defendant out near the trailer. Defendant put two shells in the shotgun, three in his pocket, and left the car. Chappell then drove about a mile down the highway and parked in a church yard to wait. About 9:35 p.m. defendant, with shotgun in hand, came running down the highway and re-entered Chappell's car. Chappell asked him if he talked to Stanley Wayne Blanchard and "he said he blowed his damn head off" and said if Chappell opened his mouth he would get him, that Chappell was just as guilty as he was. Defendant said he pulled a water cooler up to the window and saw Blanchard seated at the table eating and defendant's wife standing beside him; that he waited for his wife to leave the line of fire "and then he blew his damn brains out."

Chappell further testified that defendant removed all his clothing except his shorts and stuffed them in a big brown paper bag, saying the bloodhounds could not pick up a scent if he did not have any clothes on. Defendant told Chappell to take the gun and the clothes and throw them away and to keep his mouth shut or he would also be killed.

Chappell put defendant out at defendant's driveway. He then drove along Highway 158 near Sunbury and took various rural roads for several miles to a point where he heaved the shotgun and box of shells into the canal. Driving to another spot on an unpaved road, he threw the clothing in the bushes on the right hand side of the road. The pair of pants fell out of the paper bag and Chappell retrieved them and threw them in the bushes on the other side. He then drove to his cousin's trailer where he spent the remainder of the night.

On Sunday, 6 August 1972, he concluded that he could no longer keep the matter secret. He told Earl Jordan about it on Sunday afternoon and on Monday morning consulted a lawyer. He then talked to Sheriff Broughton of Perquimans County and SBI Agent Wise, telling them exactly what had happened. Accompanied by the sheriff and other officers, he showed them where he had thrown the gun and the defendant's clothing. Those items were recovered by the officers and offered in evidence at the trial.

Sheriff J. H. Broughton testified that in response to a call he went to the Jack Dail trailer at 9:50 p.m. on the night of

5 August 1972. He found Stanley Wayne Blanchard lying on his back on the floor in the kitchen area of the trailer. Blanchard had been shot in the back of the head. There was blood on the table and a large quantity of blood on the floor where he lay. He was still alive but died soon thereafter. It was stipulated at the trial that Blanchard died as a result of a shotgun wound to the head inflicted on 5 August 1972.

Sheriff Broughton further testified that he found a water cooler located about five feet from the trailer at the kitchen window. The kitchen window above the sink had a hole in it, and the front window was broken and the screen to it had round holes in it. There was glass on the front porch on the floor beneath the front window and on the windowsill. The water cooler was offered in evidence. A wad from a 16-gauge shotgun shell was lying in the seat of a chair at the table in the kitchen. ·

Sheriff Broughton further testified that prior to 5 August 1972 defendant and his wife had been living together part of the time and separated part of the time; that he saw William Lee Chappell on the afternoon of 7 August 1972 and Chappell related substantially the same account of events of the preceding Saturday night that he had testified to in court.

Charles Young corroborated Chappell's testimony · with respect to purchase and sale of the shotgun · and identified, by serial number, the shotgun offered in evidence as the same gun he sold Mr. Chappell.

Defendant did not testify and offered only one witness, his mother. She testified that on 5 August 1972 defendant came to her home for a few minutes around 7 p.m. He was dressed in·a sport shirt with short sleeves and was wearing dark trousers. Later that night at 9:10 p.m. she called him on the telephone and conversed with him for five minutes. As a result of the phone conversation he again came to her home to get some cupcakes she had baked for him, arriving on this occasion around 9:30 p.m. and staying at her home until 11 p.m. She testified that she had been doing defendant's laundry for him for six or eight months; that he never owned a shirt like the one offered in evidence and never had a black sweater like State's Exhibit 2. She said defendant was her only son and is forty-six years of age.

The jury convicted defendant of murder in the first degree and he was sentenced to life imprisonment.

State v. Carthens

*Twiford, Abbott & Seawell by O. C. Abbott, attorney for defendant appellant.*

*Robert Morgan, Attorney General, and John M. Silverstein, Associate Attorney, for the State of North Carolina.*

HUSKINS, Justice.

The case on appeal contains no assignments of error. In the brief, defense counsel states that he is unable to find prejudicial error but has perfected the appeal to the end that this Court may examine the entire record.

[1] The appeal itself is considered an exception to the judgment and presents for review any error appearing on the face of the record proper. *State v. Cox,* 281 N.C. 131, 187 S.E. 2d 785 (1972); *State v. Elliott,* 269 N.C. 683, 153 S.E. 2d 330 (1967). Unless error appears on the face of the record proper, the judgment will be sustained. *State v. Bumgarner,* 283 N.C. 388, 196 S.E. 2d 210 (1973); *State v. Williams,* 268 N.C. 295, 150 S.E. 2d 447 (1966).

[2] Ordinarily, the record proper in criminal cases consists of (1) the organization of the court, (2) the charge (information, warrant or indictment), (3) the arraignment and plea, (4) the verdict, and (5) the judgment. *State v. Tinsley,* 279 N.C. 482, 183 S.E. 2d 669 (1971); *State v. McClain,* 282 N.C. 357, 193 S.E. 2d 108 (1972).

A careful examination of the record proper reveals no error. Evidence of defendant's guilt is overwhelming. In the trial, verdict and judgment we find

No error.