STATE OF NORTH CAROLINA v. ROBERT ARTHUR PACE

No. 8021SC803

(Filed 3 March 1981)

1. **Rape § 5– use of force – sufficiency of evidence**

    The State's evidence in a prosecution for second degree rape and second degree sexual offense was sufficient to show that the acts against the victim were committed by force and against her will.

2. **Rape § 4.1– evidence of prior rape – irrelevancy**

    In this prosecution for second degree rape and second degree sexual assault in which the victim testified that defendant wore a plaid jacket and referred to her as "Baby Girl" and consent by the victim was the only fact in issue, testimony by a State's witness that defendant wore a plaid jacket and used the term "Baby Girl" when he raped her some two months before the crimes in question was not competent to show identity, intent, motive, *modus operandi* or a common plan or scheme since there was no issue as to defendant's identity, intent or motive, and such testimony did not show a *modus operandi* or a common plan or scheme.

APPEAL by defendant from *McConnell, Judge.* Judgment entered 5 June 1980 in Superior Court, FORSYTH County. Heard in the Court of Appeals 27 January 1981.

Defendant was indicted for second degree rape and second degree sexual offense, violations of G.S. 14-27.3 and -27.5. He pleaded not guilty and was tried by a jury.

State's evidence tended to show that the victim, Cynthia LaVerne Hairston, and her boyfriend, Jasper Randleman, Jr., went to a bus station in Winston-Salem around midnight on 16 January 1980 in order for Hairston to get a bus to her home in Danville, Virginia. After waiting for some time, Randleman decided to borrow his mother's car in order to drive Hairston back to Virginia. He saw defendant, whom he recognized from school, at the bus station and asked defendant to give him a ride to his mother's house. Randleman and defendant left shortly before 4:00 a.m. At 4:25 a.m. defendant returned to the bus station alone and began talking with Hairston. She testified that he suggested that she sit in his car to warm up since it was cold in the bus station and that she agreed. Once they were in the car, defendant drove away. He drove across town and parked on a deadend street. Hairston's testimony continued:

> So he said, "Come here." And I said, "What do you want?" He said, "I have something to tell you." I said, "Well, I can hear just fine from here." So, you know, he didn't — I didn't go over to his side, and he immediately slid over to my side. And I said, "Oh, my God, what are you going to do?" I said, "What are you going to do to me?" And he said, "Baby Girl, you can make this hard, or you can make it easy." And due to the fact that I was pregnant, I put up a little fight but not very much. And I said, "I can't be doing anything like this." I said, "I am eight months pregnant," and I said, "and my doctor advised strongly against things like this past the seventh month." He said, "Listen, I have dealt with women like you. I have dealt with women in your condition before, and if you will just calm down, everything will be okay, Baby Girl."
>
> Right at that moment, he pulled me down onto the seat, knocking my head up against the window. He pulled off my blue jeans, panty hose, and panties, and then he told me to take aloose my blouse. And I said, "My blouse doesn't un-

State v. Pace

button all the way down, it only has three buttons." Well, he just roughly grabbed the buttons and pulled them aloose himself, and then he pulled my legs apart, forced his body on me, and began to have intercourse. I guess that went on for about twenty or twenty five minutes, and then he got up, and he fell back onto the seat behind the steering wheel, and he said that he wanted me to have oral sex. All at the same time he was pulling my hair and pulling my face over to his side. I told him that I couldn't do anything like that, I didn't want to do anything like that, I had never done anything like that before, and I didn't even know how. He said, "well (sic), I will show you."

So he took one hand and pushed my head down between his legs, and he took his other hand and he held his penis and put it into my mouth, and then he was telling me to open wide and take my hand and just rub up and down and up and down. So I guess that went on for about three or four minutes, and I told him that he was hurting my face on the steering wheel, but he still wouldn't stop. Once again he just said, "Baby Girl, you can make this hard, or you can make it easy." So I went ahead and did it. So after that, he got up, and he wanted to have intercourse again. He said, "You got to make me come on (sic) way or the other." So I said, "I don't feel like it." I said, "You have hurt me already." I said, "I can't go through that again." He said, "Well, either you can take it from the front or you can take it from the back." And I said, "I can't lay on my stomach," I said, "because it hurts when I lay down that way." And I said, "I can't stay here any longer." I said, "I will have to go back." And he said, "Well, it is left up to you how long you stay here." And then he got on top of me, had intercourse again.

Defendant then drove Hairston back to the bus station and put her out at about 6:00 a.m. Randleman returned to the bus station about an hour later, and they went to report the matter to police. Hairston described defendant as wearing a plaid blazer.

State also presented the witness Vickie Long Rorie. She testified, over objection, that she had met the defendant through a friend on 4 November 1979 and that later that night

he had returned to her apartment and threatened her with a weapon and raped her. She testified that defendant had been wearing a plaid jacket and had referred to her as "Baby Girl."

Defendant testified that he returned to the bus station to buy cigarettes after giving Randleman a ride home and that Hairston approached him and started a conversation. She asked where she could buy reefer and he drove her to a friend's house to buy marijuana. The friend was not home, but defendant had two marijuana cigarettes and they smoked them. He testified that Hairston then slid over to his side of the car seat and they began fondling each other and engaged in intercourse. Defendant testified that he broke off the intercourse because he didn't think it right with Hairston being pregnant, but that she approached him again and unzipped his pants and performed fellatio until he pulled away. She asked him for $25 and he said that he did not have it. He drove her back to the bus station and she said, "Well, you are going to pay one way or the other." Defendant admitted intercourse with Vickie Long Rorie on 4 November 1979, but stated that it had been with her consent.

Defendant was convicted as charged on both offenses and a consolidated judgment was imposed. He has appealed.

*Attorney General Edmisten, by Assistant Attorney General Nonnie F. Midgette, for the State.*

*David P. Mast, Jr., for defendant appellant.*

MORRIS, Chief Judge.

[1] Defendant first argues that the trial court erred by denying his motions to dismiss the charges due to the insufficiency of the evidence of force. He argues that the evidence raised no more than a suspicion or conjecture as to the use of force against the victim. We disagree. Both second degree rape and second degree sexual offense must be committed "[b]y force and against the will of the other person." G.S. 14-27.3 and -27.5. The testimony of the prosecuting witness tended to show that the acts were indeed committed by force and against her will, and defendant's motions for dismissal were properly denied.

[2] Defendant next argues that the trial court erred by allowing the testimony of Vickie Long Rorie and by instructing the

jury on how to consider her testimony. The general rule is that in a prosecution for a particular crime, the State cannot offer evidence tending to show that the accused has committed another distinct, independent, or separate offense, even though the other offense is of the same nature as the crime charged. *State v. McClain*, 240 N.C. 171, 81 S.E. 2d 364 (1954). The opinion in *McClain* enumerates eight well-recognized exceptions to the general rule. Certain of these exceptions allow admission of evidence relevant to the defendant's identity, intent and motive. Another exception allows evidence tending to show a common plan or scheme embracing the commission of a series of related crimes notwithstanding the fact that it also shows defendant's commission of another crime. *Id. Stansbury* states the law as follows:

> Evidence of other offenses is inadmissible on the issue of guilt if its only relevancy is to show the character of the accused or his disposition to commit an offense of the nature of the one charged; but if it tends to prove any other relevant fact it will not be excluded merely because it also shows him to have been guilty of an independent crime.

1 Stansbury's N.C. Evidence, § 91 (Brandis rev. 1973).

The trial court allowed Vickie Long Rorie to testify that defendant had raped her some two months before the present alleged crimes on grounds that her testimony tended to show the identity and *modus operandi* of the defendant. In its charge the trial court instructed the jury to consider Rorie's testimony solely for the purposes of establishing identity, *modus operandi*, intent, motive, and a plan or scheme of the defendant involving sex crimes. However, even before Rorie was called as a witness, defense counsel had informed the trial court that he would rely upon the defense of consent; and by the time the jury instructions were given, it was quite clear that consent was the fact in issue. Thus, none of the permissible purposes to which Rorie's testimony might have been put was relevant in this case. There was no issue as to defendant's identity, since his own testimony tended to show that he was with the prosecuting witness at the time involved and that acts of intercourse and fellatio did occur. There was no issue as to defendant's intent or motive. The issue, rather, was the state of mind of the prosecuting witness, whether the acts were committed by force and

against her will. The mere fact that defendant wore a plaid jacket and used the term "Baby Girl" with both Rorie and the prosecuting witness does not show a *modus operandi* or bring Rorie's testimony within the "common plan or scheme" exception of *McClain. Compare State v. Thompson,* 290 N.C. 431, 226 S.E. 2d 487 (1976); *State v. McClain,* 282 N.C. 357, 193 S.E. 2d 108 (1972). These two similarities tended to show identity, but identity was not at issue. It is true that our appellate courts have been quite liberal in construing the exceptions to the general rule of *McClain* when similar sex crimes are involved. *State v. Greene,* 294 N.C. 418, 423, 241 S.E. 2d 662, 665 (1978); 1 Stansbury, *supra,* § 92. However, we cannot extend this liberality to the present situation. Evidence which has no logical tendency to prove a fact in issue is inadmissible, and its admission will constitute reversible error if it is of such a nature as to mislead the jury or prejudice the opponent. *Pearce v. Barham,* 267 N.C. 707, 149 S.E. 2d 22 (1966); 1 *Stansbury, supra,* § 77. Here, the testimony of Vickie Long Rorie was not relevant to the fact in issue. Her testimony tended to show the bad character of the defendant and his disposition to commit sex crimes. This the State may not do. *See State v. Whitney,* 26 N.C. App. 460, 216 S.E. 2d 439 (1975). We cannot say that the admission of this testimony was harmless since the defense relied so heavily upon defendant's credibility.

Defendant's remaining assignments of error relate to evidentiary rulings and jury instructions which may not occur upon retrial, and we will therefore not address them.

New trial.

Judges VAUGHN and BECTON concur.